## Richmond

GEORGE HUGH CAUDILL V. C. C. PEYTON, SUPERINTENDENT OF THE VIRGINIA STATE PENITENTIARY.

December 6, 1968.

Record No. 6778.

Present, Eggleston, C.J., Buchanan, Snead, Carrico, Gordon and Harrison, JJ.

*John W. Gillespie* for plaintiff in error.

*Gerald L. Baliles, Assistant Attorney General (Robert Y. Button, Attorney General; Reno S. Harp, III, Assistant Attorney General; Overton P. Pollard, Assistant Attorney General,* on brief), for defendant in error.

SNEAD, J., delivered the opinion of the court.

On November 21, 1966, George Hugh Caudill, petitioner, filed a petition for a writ of *habeas corpus ad subjiciendum* in the Circuit Court of the County of Tazewell. He alleged that he was being illegally detained by C. C. Peyton, Superintendent of the Virginia State Penitentiary, defendant, on a judgment order of conviction for murder in the first degree entered February 4, 1960 and an order sentencing him for the offense entered on March 11, 1960. He asserted that the orders were void because he was not afforded a public trial guaranteed him under the Sixth and Fourteenth Amendments to the Constitution of the United States. The trial court appointed counsel to represent the petitioner and later held a plenary hearing. By order

entered April 25, 1967, the prayer for a writ was denied. Upon petition of Caudill, we granted him a writ of error to that judgment.

The sole issue involved in this appeal, as conceded by counsel for petitioner in oral argument, is whether Caudill was denied a public trial as guaranteed him by the Sixth Amendment to the Constitution of the United States.[1]

On October 6, 1959 Caudill was arrested on a warrant charging him with the murder of Robert Dixon. The next day, on motion of the Commonwealth's attorney, the judge of the Tazewell County Court ordered that he be committed to Southwestern State Hospital "for observation and determination as to his mental condition." On November 30, 1959, the hospital reported, among other things, that Caudill "is not now psychotic or insane and has not been psychotic or insane since admission", and that he "is mentally competent and able to return to Court."

The petitioner was returned to Tazewell county and counsel was appointed to defend him. Later, on February 4, 1960, he appeared before the Circuit Court in custody of the sheriff. The court advised him of his right to be indicted by a grand jury for the charge contained against him in the warrant. "[T]he accused after private consultation with his attorney, in open Court, signed a paper writing waiving indictment by the grand jury, and requesting, consenting and agreeing to be tried on the charge contained in the warrant, * * *." Upon arraignment, he pleaded not guilty to the charge and a trial by jury was duly waived. After hearing evidence the court found Caudill guilty of murder in the first degree, and on motion of counsel for Caudill the court's probation officer was directed to conduct an investigation and file a presentence report. On March 11, 1960 the report was presented to the court in the presence of Caudill and his attorney. At the same time a copy thereof was delivered to counsel for examination and at the conclusion of the hearing the court sentenced Caudill to confinement in the State penitentiary for a period of forty years.

The evidence adduced at the plenary hearing on the petition for *habeas corpus* shows that the trial on February 4, 1960 was had without objection in the judge's chambers during a term of court. This room adjoins the courtroom near the rear on the east side and measures eighteen feet by twelve feet, nine inches. The judge's desk was lo-

---

[1] Amendment VI. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial * * *."

cated in about the center of the room facing the door that opens into the courtroom. There were spectator benches in the courtroom about three to four feet from that door. In addition there were eight to ten chairs and other office equipment in chambers. The courtroom is forty-nine feet, three inches by forty-seven feet. The judge's bench is at the south end; the jury box is immediately in front of the bench; the witness stand is approximately twenty feet from the bench, and the nearest seat for the public is between twenty-five and thirty feet from the bench.

Those present in chambers at the trial included Judge Vincent L. Sexton, Jr., the Commonwealth's attorney, the clerk of the court, Caudill and his attorney, and deputy sheriffs. Caudill said that the probation officer was also present part of the time.

None of the witnesses who testified at the *habeas corpus* hearing could recall with certainty whether or not persons were in the courtroom during the trial. The Commonwealth's attorney stated: "I seem to remember people being out here [courtroom], going and coming. It is common that people would be up and listening at the door. * * *" The evidence establishes that the door from the judge's chambers into the courtroom was open during Caudill's trial, and that it was a common practice of the court at that time to hold non-jury trials in chambers.

Judge Sexton testified, among other things, that because of the size of his chambers, "ordinarily no spectators are there unless they are directly interested in the matter being considered * * *"; that the courtroom is large and the acoustics are bad, and that "very often, as a matter of convenience so that the parties can be closer together and understand things better, we go into Chambers to have a hearing * * *". He further testified that persons in the courtroom would have no difficulty in hearing "what was going on" in chambers; that persons sitting within ten to fifteen feet of the door could see into his chambers, and that he had always considered "Chambers in open Court."

Caudill cites a number of cases from other jurisdictions to support his position that he was not afforded a public trial. An examination discloses that persons were excluded from witnessing the trial in those cases. In the case at bar there was no showing that anyone was excluded. Hence, the cited cases are not applicable.

The recent case of *Jones* v. *Peyton*, 208 Va. 378, 158 S.E.2d 179, which was decided after the writ of error in the present case was

granted, involved the question of a public trial. In that case Jones was tried in the judge's chambers with the door closed while members of his family waited in the courtroom for the trial to commence. In addition, a sister of Jones, who was also seated in the courtroom, was prepared to testify in his behalf, but upon inquiry of a court attaché she was informed that the trial had been concluded. We held that Jones was denied the right to a public trial guaranteed by the Sixth Amendment to the Constitution of the United States, made applicable to the states in criminal proceedings through the Fourteenth Amendment, and thus his conviction was a nullity. During the course of the opinion, Mr. Justice I'Anson, speaking for the court, said:

"The term 'public trial' is generally associated with the idea of a trial in an open courtroom in which the proceedings are open to public view. However, the mere fact that petitioner was tried in the judge's chambers and not in open court does not in itself constitute a denial of a public trial. *People* v. *Terry*, 99 Cal.App.2d 579, 583-584, 222 P.2d 95, 99 (1950). Whether an accused has been deprived of his constitutional right to a public trial by holding it at other than in an 'open courtroom' depends upon whether the public had freedom of access. Annot., 156 A.L.R. 265, 291 (1945); Supp. 48 A.L.R.2d 1436, 1451 (1956); 21 Am. Jur. 2d, 'Criminal Law' § 267, p. 303. It has been held that a trial in the judge's chambers did not constitute a denial of a public trial where there was no exclusion of the public or where there was no affirmative proof in the record that the public had been excluded. *Fritz* v. *State*, 146 Tex. Crim. Rep. 451, 176 S.W.2d 187 (1943); *People* v. *Terry, supra; People* v. *Hancasky*, 410 Ill. 148, 101 N.E.2d 575 (1951); *People* v. *Simmons*, 285 App. Div. 470, 138 N.Y.S.2d 97 (1955); *People* v. *Cash*, 52 Cal.2d 841, 345 P.2d 462 (1959)." 208 Va. at 380-381, 158 S.E.2d at 181.

The facts in the case at bar are materially different from those in the *Jones* case. Here, the door that connects the judge's chambers with the courtroom was open and the public was free to hear and to observe the trial while it was being conducted. There was no proof that any members of Caudill's family, his friends, or members of the public were excluded from the trial. We hold that, under the facts and circumstances of this case, Caudill was afforded a public trial, and that his constitutional right to such a trial was not violated.

The judgment appealed from is

*Affirmed.*