**Richmond**

RICHARD PAUL VESCUSO

v.

COMMONWEALTH OF VIRGINIA

No. 0710-85

Decided March 17, 1987

COUNSEL

Robert A. Bruce, for appellant.

Russell C. Williams, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**BENTON, J.** — Richard Paul Vescuso was convicted by a jury of unlawfully and feloniously escaping from the Nottoway Correctional Center in violation of Code § 53.1-203. On appeal, he contends that holding his trial within the confines of the Nottoway Correctional Center was a denial of his constitutional rights to a

public trial, to a fair trial, and to equal protection of the laws. He also contends that the limitation on his *voir dire* of the jury panel was a denial of the right to an impartial jury. We reverse the conviction because of violations of Vescuso's constitutional rights to a public trial and to a fair trial.

Vescuso escaped from the Nottoway Correctional Center while a prisoner there. Following his escape, Vescuso went to a house in the vicinity of the prison, identified himself as an escapee, and asked if he could enter to warm himself. The occupant of the house told Vescuso to sit on the porch and said he would get help; the occupant then telephoned the police department. Vescuso did not attempt to enter the house and was sitting on the front porch when the police arrived to return him to the prison.

Vescuso's trial on a charge of unlawfully and feloniously escaping from a correctional facility was held in a courtroom located within the Nottoway Correctional Center rather than in a courtroom at the Nottoway County Courthouse.[1] Nottoway Correctional Center is a medium security prison which houses a multitude of individuals who have been convicted of various crimes. It is entirely surrounded by a perimeter wall. The courtroom in which Vescuso was tried is located within the confines of the prison's perimeter wall.

Vescuso was convicted and sentenced by the jury to five years in prison, the maximum penalty allowed.

---

[1] Although not among the issues raised on appeal, the record does not reflect whether the prison courtroom was selected in accordance with the following statutory provisions:

Code § 17-14: Every circuit . . . court for any country . . . shall be held at the courthouse of such county . . . except when some other place is prescribed by law or lawfully appointed . . . .

Code § 17-15: Whenever, in the opinion of a circuit . . . court, or the judge thereof, the courthouse or other place wherein it is required to hold its session, cannot, or should not, from any cause, be occupied by it, or if the same shall be destroyed, or is being repaired, renovated, or enlarged by addition thereto, the court may hold its session at such places within the limits of the judicial circuit of which the said circuit court is a constituent part . . . as may be appointed by its order, or by the warrant of the judge thereof in vacation, directed to its clerk, until the courthouse or its lawful place of session can or should be thereafter occupied, or until another shall be built and fitted for its occupation, or until such repairs, renovations or additions be completed, or until some other place be appointed by the court.

## I.

■ The right of one accused of a crime to receive a public trial is secured by the constitutions of the United States and Virginia.[2] U.S. Const. amend. VI; Va. Const. art. I, § 8. The sixth amendment right to a public trial is a fundamental right and is protected through the fourteenth amendment against abrogation by state action. *Argersinger v. Hamlin*, 407 U.S. 25, 27-28 (1972); *In Re Oliver*, 333 U.S. 257, 272-73 (1948); *Cumbee v. Commonwealth*, 219 Va. 1132, 1134, 254 S.E.2d 112, 114 (1979).

■ A criminal trial should be "a 'public trial' in the ordinary common-sense acceptation of the term." *Jones v. Peyton*, 208 Va. 378, 381, 158 S.E.2d 179, 181 (1967); *see State ex rel. Varney v. Ellis*, 149 W. Va. 522, 523-24, 142 S.E.2d 63, 65 (1965). *See generally* 21A Am. Jur. 2d *Criminal Law* § 880 (1981). A public trial entails at least a requirement that attendance "is not limited or restricted to any particular class of the community, but is open to the free observation of all." *Cumbee v. Commonwealth*, 219 Va. at 1135, 254 S.E.2d at 115 (quoting *Jones v. Peyton*, 208 Va. at 380, 158 S.E.2d at 181). One measure of whether an accused has been deprived of his constitutional right to a public trial if the trial is held at a place other than an "open courtroom" is whether the public had freedom of access. *Jones v. Peyton*, 208 Va. at 380, 158 S.E.2d at 181. When measured against these standards, Vescuso's trial clearly was not a "public trial."

We believe it is manifest from the location of the courtroom behind the prison walls that Vescuso's trial was not "public" in the ordinary sense of that word. Persons desiring to enter the prison are subject to the various admittance and clearance precautions necessary to maintain the security of the prison. The very location of the courtroom setting, behind the prison walls, imposes a significant impediment to free public access. Penal institutions are by their very nature closed to the general public and are universally considered to be secure from visitation except by persons on official business or by families of inmates during strictly scheduled time limits. Prisons are not places where citizens are en-

---

[2] The right to a public trial belongs to the defendant and not to the public. *Gannett Co. v. De Pasquale*, 443 U.S. 368, 379-80 (1979). Both the public and the press have a qualified first amendment right to attend a criminal trial. *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 603 (1982).

couraged to visit or enter. They are generally considered by the populace to be places where a citizen may not freely enter. By definition, therefore, free and uninhibited access does not exist within the confines of a prison facility. The setting of the courtroom within the perimeter walls of the Nottoway prison is, therefore, rife with impediments to free access and open observation. The conduct of a criminal trial in such a setting unquestionably had the effect, if not the purpose, of discouraging public attendance. Attendance certainly would have been limited to those persons who were stout-hearted enough to endure the anxiety of entering the penal institution and submitting to the tense atmosphere of the custodial environment and to the security necessary to protect the custodial facility. *See State v. Lane,* 60 Ohio St. 2d 112, 120, 397 N.E.2d 1338, 1343 (1978). These factors refute any assertion that the public had free access to Vescuso's trial.

The Commonwealth argues that, because the record contained no affirmative proof showing that the public was excluded from the trial, it was a public trial. In support of its argument, the Commonwealth cites *Caudill v. Peyton,* 209 Va. 405, 164 S.E.2d 674 (1968). In *Caudill,* the Supreme Court held that no abrogation of the public trial right occurred when the accused was tried in the judge's chambers adjoining the courtroom. *Id.* at 408, 164 S.E.2d at 676. We believe that the court found persuasive the fact that the door between the judge's chambers and the courtroom remained open during the entire trial. The court focused upon this factor in distinguishing *Caudill* from *Jones v. Peyton,* which held that the public trial right had been abridged when trial was held in the judge's chambers and the door between the chambers and the courtroom was closed. In that situation, there was sufficient evidence to find that the public did not have free access and had been effectively excluded.

We believe that Vescuso's trial situation was more akin to that in *Jones* than *Caudill.* Like the setting in *Jones,* there was a barrier separating Vescuso's trial from free public access. In *Jones,* the barrier was a closed door; in the present case, the barriers consisted of a perimeter wall, the varied security precautions inherent in a prison, and the factors discussed previously, all of which tend to discourage public attendance. Furthermore, the character of a prison facility is fundamentally different from that

of an open judge's chambers adjoining a courtroom at the public courthouse. These differences are sufficient to justify the conclusion that the public was effectively excluded from attending Vescuso's trial.[3]

■ A public trial is "not merely a method to assure that nothing untoward is done clandestinely but a guarantee against the very conduct of private hearings." *Rovinsky v. McKaskle*, 722 F.2d 197, 202 (5th Cir. 1984). The right to a public trial "is a reflection of the notion, deeply rooted in the common law that 'justice must satisfy the appearance of justice.' " *Levine v. United States*, 362 U.S. 610, 616 (1960) (quoting *Offutt v. United States*, 348 U.S. 11, 14 (1954)). The public courtroom setting is an essential part of the fundamental conception of justice. The courtroom used in the trial of this case, located behind a perimeter wall and in the foreboding atmosphere of a prison, is the very antithesis of a public courtroom. The setting for the trial of this case substantially eroded the possibility that the trial process would be subject to public scrutiny and that the trial would provide a reliable and fair determination of guilt and punishment. *See Rovinsky v. McKaskle*, 722 F.2d at 201-02.

■ The defendant's right to public trial, however, is not absolute and is subject to limitation when sufficient justification exists to close the trial. *Waller v. Georgia*, 467 U.S. 39, 45 (1984); *Rovinsky v. McKaskle*, 722 F.2d at 200. To limit the public trial right, "the party seeking to close the [trial] . . . must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." *Waller*, 467 U.S. at 48. The defendant need not prove specific prejudice in order to obtain relief from a violation of his sixth

---

[3] On October 21, 1986, another panel of this Court held that trials conducted within the confines of a prison facility are not *per se* in violation of the United States and Virginia constitutions. *Dammerau v. Commonwealth,* 3 Va. App. 285, 289-90, 349 S.E.2d 409, 411 (1986). The *Dammerau* decision held that the "surroundings and circumstances of each situation must be examined to determine if the public was inhibited from attending . . . ." *Id.* While the decision of another panel of this Court is entitled to great weight, it is not binding on us.

To the extent that *Dammerau* may be read to hold that trial in a courtroom behind the prison walls satisfies the "freedom of access" test, we respectfully disagree and decline to follow that holding.

amendment rights. *Id.* at 49.

In response to Vescuso's motion for a public trial, the trial judge ruled: "The motion for the public trial is not denied, but the premise of the motion is denied by the Court, because this is a public trial." The trial judge made no findings concerning the need to hold Vescuso's trial within the confines of the Nottoway prison. The Commonwealth, however, asserts as justification for holding the trial in the penitentiary courtroom the state's interest in security and maintaining custody over Vescuso. The argument is made that the need for maintaining such close watch over him is apparent from the fact of his prior escape.

We do not dispute that the Commonwealth had a weighty interest in retaining custody over Vescuso throughout his trial; however, there was little on this record to substantiate the fear that Vescuso would again attempt escape. Admittedly, Vescuso was being tried for having escaped from prison; however, the charge of escape, standing alone, does not justify the extraordinary procedure of trying Vescuso in prison. The circumstances of his recapture serve to mitigate the magnitude of the security risk that Vescuso posed at the time of trial. The record contains no evidence to support the Commonwealth's assertion of an unacceptable security risk in trying Vescuso at the county courthouse. *See generally United States ex rel. Lloyd v. Vincent*, 520 F.2d 1272 (2d Cir.), *cert. denied*, 423 U.S. 937 (1975). There was no showing that sufficient security could not have been maintained at the county courthouse, and the trial judge made no inquiry to assure that Vescuso's right to a public trial was not being sacrificed for less than compelling reasons. *See State v. Sheppard*, 438 A.2d 125, 127-28 (Conn. 1980). We therefore conclude, on the basis of this record, that holding the trial in the prison courtroom, a courtroom effectively closed to the public, was not supported by specific findings of an overriding public interest, and therefore, was an infringement of Vescuso's right to a public trial.

## II.

Like the right of an accused to receive a public trial, the right of one accused of a crime to receive a fair trial at the hands of an impartial tribunal is also mandated by the sixth amendment, U.S. Const. amend. VI, and is secured to an accused against state

infringement by the fourteenth amendment. *Drope v. Missouri*, 420 U.S. 162, 172 (1975); *Duncan v. Louisiana*, 391 U.S. 145, 149 (1968). Claims that defects in the trial procedure precluded a fair trial require the reviewing court to scrutinize the entire trial to determine whether the accused has been afforded the requisite due process. *See Estes v. Texas*, 381 U.S. 532, 543 (1965); *Minor v. Harris*, 556 F. Supp. 1371, 1378 (S.D.N.Y.), *aff'd*, 742 F.2d 1430 (2d Cir. 1983).

 Although there is no hard and fast test by which to evaluate a particular trial practice for compliance with the fair trial mandate, *Brown v. Wainwright*, 459 F. Supp. 244, 246 (M.D. Fla. 1978), the presumption of innocence afforded to a criminal defendant is an integral component of the fair trial right. *Estelle v. Williams*, 425 U.S. 501, 503 (1976) (quoting *Coffin v. United States*, 156 U.S. 432, 453 (1895)); *see also Taylor v. Kentucky*, 436 U.S. 478, 483 (1978); *State v. Lane*, 60 Ohio St. 2d 112, 115, 397 N.E.2d 1338, 1340 (1979). In effectuating this presumption, a criminal defendant is entitled to be clothed with indicia of innocence until his guilt is established by the trier of fact from the evidence presented at trial. *Harrell v. Israel*, 672 F.2d 632, 635 (7th Cir. 1982); *United States v. Samuel*, 431 F.2d 610, 614 (4th Cir. 1970), *cert. denied*, 401 U.S. 946 (1971). "[O]ne accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial." *Taylor v. Kentucky*, 436 U.S. 478, 485 (1978). Thus, when a particular practice employed at trial unnecessarily dilutes the presumption of innocence, that practice is violative of the fair trial right. *See Walker v. Butterworth*, 599 F.2d 1074, 1081 (1st Cir.), *cert. denied*, 444 U.S. 937 (1979).

 In evaluating the magnitude of the effect a particular practice has on the presumption of innocence, the courts need look to "reason and common human experience." *Estelle v. Williams*, 425 U.S. at 504. The jurors themselves need not articulate a consciousness of prejudicial affect from the practice.[4] *Holbrook v.*

---

[4] When defense counsel sought to. elicit responses from the jury venire to the question, "Did you feel uneasy or uncomfortable in any way when you came to this facility to hear this case we're trying today?," in order to determine whether "they feel intimidated by coming here to this facility to hear this matter; did it prejudice their ability about

*Flynn*, 106 S. Ct. 1340, 1347 (1986).

> "Every procedure which would offer a *possible* temptation to the average man * * * to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear, and true between the state and the accused denies the [accused] due process of law."

*Estes v. Texas*, 381 U.S. 532, 543 (1965) (quoting *Tumey v. Ohio*, 273 U.S. 510, 532 (1927)). The pertinent question then becomes whether the trial within the Nottoway prison presents an unacceptable risk that impermissible factors figured into the jury's deliberations. *See Holbrook v. Flynn*, 106 S. Ct. at 1347.

Vescuso was tried in a courtroom located within the confines of the penitentiary in which he was then incarcerated. The charge on which he was tried was the unlawful escape from that same institution. We believe that the jury was confronted immediately upon entering the prison with the probable inference that Vescuso, having once escaped, was a threat to escape again, and, therefore, could not be safely tried at the Nottoway County Courthouse. We further believe that this inference was continuously manifest by the conditions inherent in the penal surroundings in which the trial took place. By conducting Vescuso's escape trial within the secure facilities of the Nottoway prison the Commonwealth constantly suggested to the jury in the most vivid manner that Vescuso was guilty of the crime charged. The pervasive sense of guilt, which obviously permeated this trial setting, was clearly antithetical to the presumption of innocence to which Vescuso was constitutionally entitled. The threat that the secure prison surroundings, and the inference drawn therefrom, would cause impermissible factors to enter into the jury's deliberations as to guilt and punishment and thereby interfere with their consideration of the valid evidence is apparent. The prejudice engendered by trying an accused person in a penal facility rather than in a public courtroom is clearly at odds with traditional notions of fairness.

The Commonwealth looks, in part, to *Holbrook v. Flynn* in support of its contention that Vescuso's trial was fair. In *Holbrook*, the Supreme Court held that no abrogation of the fair trial right

---

. . . .", the trial judge *sua sponte* stopped the inquiry because he had denied Vescuso's motion ot move the trial to a courtroom outside the prison.

occurred where four uniformed security guards were deployed in the courtroom during the accused's trial. The Court distinguished *Holbrook* from *Estelle* (compulsory trial in prison attire held unconstitutional) because of the "wider range of inferences that a juror might reasonably draw from the officers' presence." 106 S. Ct. at 1346. In further explanation, the Court said that "shackling and prison clothes are unmistakable indications of the need to separate a defendant from the community at large" whereas the presence of guards at trial "need not be interpreted as a sign that [the defendant] is particularly dangerous or culpable." *Id.* Thus, the Court did not conclude that the presence of the security guards was inherently prejudicial.

In contrast, Vescuso's trial in the prison admits of only one inference — that he is culpable and dangerous thus necessitating his exclusion from the public courthouse where trials ordinarily occur. Like compulsory trial in prison clothes, mandatory trial of accused persons in penal custody in a courtroom located within the perimeter walls of a prison is a "constant reminder of the accused's condition implicit in such distinctive, identifiable" surroundings. *See Estelle v. Williams*, 425 U.S. at 504-05.

The fair trial issue is not limited to a concern whether the situs of the trial gave rise to the jury's knowledge of Vescuso's status as an inmate. If the trial had taken place at the county courthouse the jury may have learned of Vescuso's incarceration in any event. *Compare United States ex rel. Stahl v. Henderson*, 472 F.2d 556 (5th Cir.), *cert. denied,* 411 U.S. 971 (1973) *with People v. Roman*, 324 N.E.2d 885, 365 N.Y.S.2d 527 (1975). We are persuaded that the situs of this trial had a probable deleterious effect on the jury beyond simply confirming Vescuso's status as a prison inmate. The situs added an aggravating factor of dangerousness which the jury could not have ignored in assessing Vescuso's guilt as well as his punishment.

■ The sentencing process, as well as the process of guilt determination, must satisfy the requirements of due process. *Gardner v. Florida*, 430 U.S. 349, 358 (1977); *Mempa v. Rhay*, 389 U.S. 128 (1967); *Specht v. Patterson*, 386 U.S. 605 (1967). Vescuso had "a legitimate interest in the character of the procedure which [led] to the imposition of sentence even if he may have no right to object to a particular result of the sentencing process." *Gardner v. Florida*, 430 U.S. at 358. The environs in which the

jury heard the evidence, considered its verdict, and sentenced Vescuso to the maximum incarceration conveyed a sense of predetermined guilt and dangerousness. The inferences of dangerousness and preordained guilt presented a significant abrogation of Vescuso's right to fair trial which included the jury's determination of his sentence. We conclude, therefore, that the situs of Vescuso's trial was inherently prejudicial based on reason, principle, and common experience.

 The right of the accused to retain indicia of innocence throughout his trial is a relative one subject to a weighing of the competing interests involved. *See Illinois v. Allen*, 397 U.S. 337, 344 (1970) (allowing shackling of an unusually contumacious defendant during trial). The accused's right to be free from security precautions in derogation of the presumption of innocence must be balanced against the rights of others in the courtroom and society at large. *See Harrell v. Israel*, 672 F.2d at 635; *United States v. Samuel*, 431 F.2d at 615. Unusual security precautions are permissible when they further "essential state policy." *See Estelle v. Williams*, 425 U.S. at 505. However, such measures must be justified by a showing of "extreme need." *Harrell v. Israel*, 672 F.2d at 635-36; *Walker v. Butterworth*, 599 F.2d at 1080-81 (keeping prisoner segregated in a "dock" located in courtroom during trial not necessary to further state interest and therefore unconstitutional). As previously noted, this record does not support the argument that Vescuso's trial in the Nottoway prison furthered any essential state interest and that no less restrictive means existed than that chosen to provide trial security.

The same result obtains on adequate and independent grounds of Virginia law where the right to a fair trial is meticulously safeguarded by the Virginia constitution. Va. Const. art. I, § 8. Our Supreme Court has stated that "[n]othing should be done or permitted to prejudice [the accused's] case, or to obscure in the minds of the jurors the question, whether the evidence justifies them in a conclusion that [the accused] is guilty of the offense charged." *Harrison v. Commonwealth*, 183 Va. 394, 402, 32 S.E.2d 136, 140 (1944). "It is axiomatic that an accused, when placed upon trial for his life or liberty, is to have thrown around him every safeguard known to the law, in order that he may be afforded a fair and impartial trial." *Brown v. Commonwealth*, 138 Va. 807, 816, 122 S.E. 421, 424 (1924). Vescuso's trial in the

Nottoway prison violated these principles and, consequently, impeded his right to a fair trial.

## III.

Therefore, we remand the case for a new trial consistent with this opinion, if the Commonwealth be so advised. Because we reverse the conviction and remand for a new trial, we do not decide the issue which Vescuso raises concerning the impartial jury. We also do not decide whether Vescuso was denied his right to equal protection of the laws because that claim was not raised in the trial court with reasonable specificity. Rule 5A:18.

*Reversed and remanded.*

Barrow, J., and Cole, J., concurred.