## Richmond

RICHARD PAUL VESCUSO

v.

COMMONWEALTH OF VIRGINIA

No. 0710-85

ANTHONY WAYNE FOX

v.

COMMONWEALTH OF VIRGINIA

No. 0962-85

Decided September 15, 1987

COUNSEL

Robert A. Bruce, for appellant Vescuso.

Leslie M. Osborn, for appellant Fox.

Eugene Murphy, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

COLE, J. — Under the provisions of Code § 17-116.02, we have consolidated these two cases and granted the Commonwealth's petition for an *en banc* hearing based upon proper certifications that *Vescuso v. Commonwealth*, 4 Va. App. 32, 354 S.E.2d 68 (1987) and *Fox v. Commonwealth*, (unpublished order No. 0962-85,

March 17, 1987), are in conflict with *Dammerau v. Commonwealth*, 3 Va. App. 285, 349 S.E.2d 409 (1986), decided by another panel of this court on October 21, 1986.

In this appeal appellants, Richard Paul Vescuso and Anthony Wayne Fox, contend that their trials within the confines of the Nottoway Correctional Center denied them their constitutional rights to a public trial, to a fair trial, and to equal protection of the laws. In addition, Vescuso asserts that his *voir dire* examination was restricted by the trial judge, denying him his right to an impartial jury. Fox argues that the trial court erred in refusing to exclude certain jurors for cause. We affirm the panel decisions holding that Vescuso and Fox were denied public trials, and hold that the remaining issues need not be addressed.

On November 22, 1984, five inmates, including both Richard Paul Vescuso and Anthony Wayne Fox, escaped from Nottoway Correctional Center by cutting a hole in the fence. Vescuso and Fox were apprehended, returned to the institution, tried by a jury on May 2, 1985, and May 9, 1985, respectively, on the charge of unlawfully and feloniously escaping from the correctional center in violation of Code § 53.1-203; each was sentenced to five years, the maximum penalty allowed by law.

Both Vescuso and Fox appealed their convictions to this court and a panel of the court reversed Vescuso's conviction and remanded the case for a new trial. *Vescuso v. Commonwealth*, 4 Va. App. 32, 354 S.E.2d 68 (1987). The same panel reversed Fox's conviction by order, based upon the authority of *Vescuso*. On petition of the Commonwealth, *en banc* hearings were granted in each case on April 20, 1987.

On the morning of Vescuso's trial, he filed a motion for a public trial. He alleged that the jury trial was scheduled for the courtroom located within the Nottoway Correctional Center; that the courtroom is not open to the general public; that jurors would have to pass through several locked doors and enter the interior of the institution; and requested the court to transfer his trial to a regular courtroom outside the walls of the correctional center. The trial judge summarily denied the motion, stating that a public trial was not denied because the trial was in fact a public one. No evidence was presented by Vescuso or the Commonwealth on the issue. The transcript of the proceeding indicates that the trial was

held at the Nottoway Correctional Center. The briefs of both parties admit that the location of the trial was within the perimeter walls of the correctional center, a medium security prison.

Fox also filed in advance of trial a motion for a public trial. His motion contained the same allegations regarding a public trial as were made by Vescuso. The trial judge wrote a letter about two months prior to the trial to defense counsel explaining his denial of the motion. He noted that, although persons in the past were searched and required to sign in and out when court convened at the correctional center, in the future "there will be no shakedowns or sign in requirements for anyone attending court" and that this would apply to officers of the court, deputies, jurors, witnesses and spectators. He stated that "metal detectors may be used and the contents of pocketbooks and briefcases may be visually inspected."

The trial judge ended his letter with the following conclusory statements:

> Inmate witnesses are no more reluctant to testify in a correctional center courtroom than a courthouse courtroom. While jurors may be somewhat apprehensive about the correctional center environment, I do not believe the apprehension is significantly greater than that experienced when called to serve at the courthouse. . . . Security is indeed a factor greatly compromised when a county courthouse is swamped with vans carrying inmates from various institutions to be tried or to testify. In my opinion security is greatly heightened when trials are held at the correctional center at a location not accessible to the general inmate population.

At trial, the trial court denied Fox's motion to move the trial from the penitentiary based on the finding that it was a public trial. On *voir dire* defense counsel asked the jury panel:

> Would the fact this trial is being held inside a prison, inside the perimeter fences of the Nottoway Correctional Center anyway cause you to be unable to give the Commonwealth and the defendant a fair trial? How many of you do not feel any apprehension or fear because you are now inside the prison?

No juror responded to this question, which may have indicated that no one was free of fear.

As in *Vescuso*, no evidence was presented by Fox or the Commonwealth on the motion for a public trial. Again, the transcript indicates that the trial was held at Nottoway Correctional Center and counsel for both sides have admitted this fact in their briefs.

Vescuso and Fox contend that they are guaranteed a public trial by both the United States and Virginia Constitutions, and that their trials held within the confines of the Nottoway Correctional Center were not public and violated their right to such a trial. They argue that their trials denied public access without sufficient justification. The Commonwealth, however, maintains that, because the record contains no affirmative proof showing that the public was excluded from the trials, neither Vescuso nor Fox proved any constitutional violation of their right to a public trial.

It is undeniable that both Vescuso and Fox were entitled to public trials. The right of one accused of a crime to receive a public trial is secured by the constitutions of the United States and Virginia.[1] U.S. Const. amend. VI; Va. Const. art. I, § 8. The sixth amendment right to a public trial is a fundamental right and is protected through the fourteenth amendment against abrogation by state action. *Argersinger v. Hamlin*, 407 U.S. 25, 27-28 (1972); *In re Oliver*, 333 U.S. 257, 272-73 (1948); *Cumbee v. Commonwealth*, 219 Va. 1132, 1134, 254 S.E.2d 112, 114 (1979).

The Supreme Court of Virginia has addressed the issue of a public trial on several occasions. A criminal trial should be "a 'public trial' in the ordinary common-sense acceptation of the term." *Jones v. Peyton*, 208 Va. 378, 381, 158 S.E.2d 179, 181 (1967); *see State ex rel. Varney v. Ellis*, 149 W. Va. 522, 523-24, 142 S.E.2d 63, 65 (1965). *See generally* 21A Am. Jur. 2d *Criminal Law* § 880 (1981). A public trial entails at least a requirement that attendance "is not limited or restricted to any particular class of the community, but is open to the free observation of all." *Cumbee v. Commonwealth*, 219 Va. at 1135, 254 S.E.2d at 115 (quoting *Jones v. Peyton*, 208 Va. at 380, 158 S.E.2d at 181).

---

[1] The right to a public trial belongs to the defendant and not to the public. *Gannett Co. v. DePasquale*, 443 U.S. 368, 379-80 (1979). Both the public and the press have a qualified first amendment right to attend a criminal trial. *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 603 (1982).

One measure of whether an accused has been deprived of his constitutional right to a public trial when the trial is held at a place other than an "open courtroom" is whether the public had freedom of access. *Jones v. Peyton*, 208 Va. at 380, 158 S.E.2d at 181.

In *Jones*, the defendant was tried in the judge's chambers at the courthouse, but behind closed doors. Relatives and a co-defendant were sitting in the courtroom in anticipation of witnessing the trial. *Id.* at 379, 158 S.E.2d at 180. The Supreme Court held that Jones' trial was not a public trial in that members of the public had no "freedom of access" to attend the trial. *Id.* at 380, 158 S.E.2d at 181. The Court stressed that the public's "freedom of access" was impeded. *Id.* at 380-81, 158 S.E.2d at 181.

In *Caudill v. Peyton*, 209 Va. 405, 164 S.E.2d 674 (1968), the trial was held in the judge's chambers, but the door was open leading to the courtroom that would allow spectators and others to view the proceedings. The Supreme Court found that "freedom of access" to attend the trial was not impeded. *Id.* at 407-08, 164 S.E.2d at 676.

In *Cumbee*, the trial court entered a broad order that excluded from the courtroom during an incest trial all friends and relatives of the accused, attorneys having no connection with the case, representatives of the news media, and members of the general public. *Id.* at 1135, 254 S.E.2d at 114. The Supreme Court held that this violated the accused's right to a public trial. *Id.* at 1136, 254 S.E.2d at 115.

■ Other states have addressed similar issues. In *State v. Lane*, 60 Ohio St. 2d 112, 397 N.E.2d 1338 (1979), the defendants were convicted of escape in trials held in a courtroom located within the confines of the prison. The Supreme Court of Ohio held that these trials violated the defendants' rights to a public trial. In giving its reasons to support a public trial, the court stated:

> There are at least four policy reasons for safeguarding the need for public trials: (1) a public trial serves as an effective restraint upon a possible abuse of power; (2) a public trial assures testimonial trustworthiness by inducing fear of testimony falsely given; (3) a public trial makes the proceedings known to a possible material witness who might otherwise be

unknown to the parties; and (4) a public trial allows the public to learn about the functioning of their government.

*Id.* at 119, 397 N.E.2d at 1343 (citations omitted).

The Commonwealth argues that, because the record contained no affirmative proof showing that the public was excluded from the trial, it was a public trial. Although the record is devoid of such evidence in both *Vescuso* and *Fox*, the transcript and admissions of the parties show that the trials were held in a courtroom located within the perimeter walls of a medium security prison rather than in a courtroom of the Nottoway County Courthouse. The public policy of the Commonwealth, as established by its statutes, requires trials to be held at the courthouse. Code § 17-14 provided in pertinent part: "Every circuit . . . court for any county . . . shall be held at the courthouse of such county . . . except when some other place is prescribed by law or lawfully appointed . . . ." Code § 17-15 provides:

> Whenever, in the opinion of a circuit . . . court, or the judge thereof, the courthouse or other place wherein it is required to hold its session, cannot, or should not, from any cause, be occupied by it, or if the same shall be destroyed, or is being repaired, renovated, or enlarged by addition thereto, the court may hold its session at such places within the limits of the judicial circuit of which the said circuit court is a constituent part . . . as may be appointed by its order, or by the warrant of the judge thereof in vacation, directed to its clerk, until the courthouse or its lawful place of session can or should be thereafter occupied, or until another shall be built and fitted for its occupation, or until such repairs, renovations or additions be completed, or until some other place be appointed by the court.

We agree with the Commonwealth's contention that the burden was upon Vescuso and Fox to prove by a preponderance of the evidence that they were denied a public trial. We find, however, that upon a showing that the trial was held within the perimeter walls of a medium security prison, the defendants have proved a *prima facie* case of denial of a public trial. Although the burden of persuasion remains upon defendant throughout the trial,

once the *prima facie* case is made, the burden of going forward with the evidence shifts to the Commonwealth and it is incumbent upon it to produce evidence to justify the transfer of the trial from the regular courthouse to another location. *See* C. Friend, *The Law of Evidence in Virginia* §§ 78-88 (2d ed. 1983).

In this case the Commonwealth did not produce any evidence to show the necessity of transferring the trial of Vescuso and Fox from the Nottoway Courthouse to the correctional center. The letter of the trial judge is not evidence and even if we consider the letter, no facts or circumstances are disclosed concerning the trials of Vescuso and Fox to justify their trial in a prison. At most, the letter contains general conclusions of the trial judge. There were no findings of fact specifically related to Vescuso and Fox and neither was given an opportunity to present evidence regarding the justification for holding their trial in a prison.

A public trial is "not merely a method to assure that nothing untoward is done clandestinely but a guarantee against the very conduct of private hearings." *Rovinsky v. McKaskle*, 722 F.2d 197, 202 (5th Cir. 1984). The right to a public trial "is a reflection of the notion, deeply rooted in the common law that 'justice must satisfy the appearance of justice.' " *Levine v. United States*, 362 U.S. 610, 616 (1960) (quoting *Offutt v. United States*, 348 U.S. 11, 14 (1954)). The public courtroom setting is an essential part of the fundamental conception of justice. The courtroom used in the trial of these cases, located behind a perimeter wall and in the foreboding atmosphere of a prison, is the very antithesis of a public courtroom. The setting for the trial of these cases substantially eroded the possibility that the trial process would be subject to public scrutiny and that the trial would provide a reliable and fair determination of guilt and punishment. *See Rovinsky v. McKaskle*, 722 F.2d at 201-02.

The practice of removing trials from the courthouse to a penitentiary, in the absence of any showing of overriding public necessity or justification, offends traditional notions of fairness and basic precepts of our criminal justice system. The public trial provisions of the sixth amendment and the Virginia Constitution envision that our trials will be held under circumstances which do not inhibit public attendance or freedom of access. We cannot think of any location within the Commonwealth that gives less freedom of access than a trial within the confines of a prison. The

barrier of a perimeter wall, the varied security precautions inherent in a prison, and the factors discussed previously, all tend to discourage public attendance. Furthermore, the character of a prison facility is fundamentally different from that of a courtroom at the public courthouse. These differences are sufficient to justify the conclusion that the public was effectively excluded from attending both trials.

 We do not mean to imply that a trial may never be transferred from the courthouse to a penitentiary. However, before the constitutional right of a defendant to a public trial can be jeopardized, the record must contain findings of fact showing some clear and present overriding public interest or justification. In *Waller v. Georgia*, 467 U.S. 37 (1984), the United States Supreme Court decided that "the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceedings, and it must make findings adequate to support the closure." *Id.* at 48. In order to justify a transfer of a trial from the courthouse to another location, the trial court must adopt and implement adequate measures that will not unduly infringe upon the public trial guarantee and will assure freedom of access to the trial. Provision should be made for reasonable notice to the parties and general population who have a right to expect the trial to be held at the courthouse in accordance with the statute. Furthermore, administrative convenience is insufficient, standing alone, to justify a transfer of a criminal trial from the courthouse. *Lane*, 60 Ohio St. 2d at 122, 397 N.E.2d at 1345. We hold that these standards govern the decision to transfer a criminal trial from a courthouse courtroom to a prison courtroom.

We do not dispute that the Commonwealth had a weighty interest in retaining custody over Vescuso and Fox throughout their trials; however, there was little in this record to show that courtroom security would not adequately serve its purpose. Admittedly, they were being tried for having escaped prison; however, the charge of escape, standing alone, does not justify the extraordinary procedure of trying them in prison. The record contains no evidence to support the Commonwealth's assertion of an unacceptable security risk in trying them at the county courthouse. *See generally United States ex rel. Lloyd v. Vincent*, 520 F.2d 1272

(2d Cir.), *cert. denied*, 423 U.S. 937 (1975). There was no showing that sufficient security could not have been maintained at the county courthouse, and the trial judge made no inquiry to assure that their right to a public trial was not being sacrificed for less than compelling reasons. *See State v. Sheppard*, 438 A.2d 125, 127-28 (Conn. 1980). We therefore conclude, on the basis of this record, that holding the trials in the prison courtroom, a courtroom effectively closed to the public, was not supported by specific findings of an overriding public interest, and therefore, was an infringement of their right to a public trial.

On October 21, 1986, another panel of this court held that a trial held within the confines of Nottoway Correctional Center under circumstances substantially similar to those in these cases was not a violation of the United States and Virginia Constitutions. *Dammerau v. Commonwealth*, 3 Va. App. 285, 289-90, 349 S.E.2d 409, 411 (1986). To the extent that the holding in *Dammerau* may be in conflict with this opinion, *Dammerau* is overruled.

On the fair trial and equal protection of the law issues, we have reviewed the record of Vescuso's and Fox's trials. Although a different analysis must be made in each from the public trial issues, we find that the underlying complaint of both Vescuso and Fox is that their trials were held in prison and were not public trials. Since we reverse the convictions on the basis of the denial of public trials, and since we do not know whether the fair trial and equal protection of law issues will be raised on retrial, and if so, in what factual context they will arise, we find that it is unnecessary to address these issues.

Vescuso has also alleged that his *voir dire* of the jury panel was restricted and constituted a denial of his right to an impartial jury. Fox contends that the trial court erred in refusing to strike certain jurors for cause. Since these arguments are based upon factual situations that may not arise on a retrial of these cases, we do not address them in this appeal.

For the reasons stated, we find that both Vescuso and Fox were denied a public trial and we remand both cases to the trial court for a new trial.

*Reversed and remanded.*

70

Barrow, J., Coleman, J., Duff, J., Keenan, J., and Moon, J., concurred.

Benton, J., concurring.

For the reasons stated in the prior panel decision of *Vescuso v. Commonwealth*, 4 Va. App. 32, 354 S.E.2d 68 (1987), I concur in the judgments reversing the convictions and remanding the cases for new trials.

Koontz, C.J., with whom Baker, J. and Hodges, J., join, dissenting.

I cannot join the majority in this case and respectfully dissent. While seemingly acknowledging the case-by-case analysis required by the "freedom of access" test, the majority has effectively adopted a "per se" rule that trials held within the perimeter wall of a prison are not public trials. To the extent that the majority finds that these trials were not public without evidence in the record supporting that conclusion, I believe the majority has abandoned the settled law in this Commonwealth.

The record upon which the majority relies consists solely of "the transcript and admissions of the parties . . . that the trials were held in a courtroom located within the perimeter walls of a medium security prison rather than in a courtroom of the Nottoway County Courthouse." The record is devoid of evidence that the public was excluded or intimidated from attending the trials.

In *Dammerau v. Commonwealth*, 3 Va. App. 285, 349 S.E.2d 409 (1986), a panel of this court in reviewing an almost identical record reaffirmed the "freedom of access" test for public trials established by the Virginia Supreme Court in *Jones v. Peyton*, 208 Va. 378, 158 S.E.2d 179 (1967) and *Caudill v. Peyton*, 209 Va. 405, 164 S.E.2d 674 (1968). In *Dammerau*, the panel carefully specified the proper appellate standard for review of denial of public trial claims:

> [T]he surroundings and circumstances of each situation must be examined to determine if the public was inhibited from attending the trial so that "freedom of access" was effectively denied. In order to make such a finding, however, an appellate court such as this one must have before it a record

containing ample evidence of the surroundings and circumstances of the trial proceedings.

*Id.* at 289-90, 349 S.E.2d at 411.

The record before the court in the instant cases contains no such evidence and only by effectively adopting a per se rule that all trials held within a prison are not public can the result reached by the majority be supported. Accordingly, I would reject a per se rule and on the record in these cases hold that the appellants have not established that they were denied a public trial.