## Salem
## MELVIN WAYNE MARTIN
v.
## COMMONWEALTH OF VIRGINIA
No. 0526-89-3
Decided December 11, 1990

COUNSEL

William M. Cooper, IV, for appellant.

H. Elizabeth Shaffer, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**COLEMAN, J.**—Melvin Wayne Martin was convicted in a jury trial of attempted unlawful wounding of a police officer following a high speed chase. During much of his trial, Martin was bound and gagged by order of the trial judge due to repeated vocal disruptions of the trial. Martin contends that the trial court abused its discretion when it ordered him bound and gagged without first resorting to less drastic measures. We hold that, on the facts as shown in the record before us, the order to bind and gag the defendant was an abuse of discretion; therefore, we reverse.[1]

An automobile chase resulted when Martin refused to stop for a police officer who observed Martin driving a motor vehicle without a license tag displayed. Three deputies and a state trooper ultimately gave chase to Martin. The deputies overtook Martin and

---

[1] Martin also assigns as error the trial court's failure to give a cautionary instruction *sua sponte* to the jury not to allow the restraint of the defendant to affect their judgment, and he also contests the sufficiency of the evidence. Martin has also attempted to raise in a *pro se* brief issues upon which the writ panel had previously refused to grant an appeal and additional issues which have not been considered upon a petition for appeal. Given the basis of our decision, we do not address those issues.

rammed his car, sending Martin's car careening over an embankment.

The deputies surrounded Martin's car. One covered Martin with a shotgun from astride the front of the car. Another approached Martin's car with revolver drawn and smashed the car windshield with his nightstick. He then ordered Martin out of the car. When Martin refused, the officer began pulling Martin through the driver's door window. Deputy R. W. Thompson of the Rockbridge County Sheriff's Department testified that Martin tried to jab him with a pair of scissors when he and other officers were attempting to remove Martin from his car. The officer felt Martin attempting to poke him in the side and saw a pair of scissors in his hand. The officer responded by striking Martin in the head with his nightstick. The officers then pulled Martin from his car and subdued him. Martin was indicted for attempted malicious wounding.

At the commencement of *voir dire*, the trial judge stated that "there was some indication to the Court prior to these proceedings that . . . for security reasons, . . . the defendant should be shackled." The trial judge ruled, however, that he would not shackle the defendant but warned him that if he continued to verbally interrupt the proceedings, he would be shackled.[2]

The trial judge twice admonished Martin when he made disruptive remarks and warned him that if he continued with this conduct, he would be bound and gagged. The first warning came during *voir dire* when Martin interjected questions and comments regarding the qualifications of the jurors and what he considered unfairness in the selection process. The trial judge told him, in the presence of the jury, that he could not vocally interrupt proceedings and should consult instead with his counsel. At the conclusion of *voir dire*, out of the jury's presence, the court asked counsel to comment on an allegation brought to the court's attention, the source of which was not made known, that Martin was a security risk and needed to be shackled. Prior to trial, Martin purportedly had stated that he would take command of the proceedings and

---

[2] Although the transcript does not indicate prior verbal interruptions by the defendant, it is apparent from the trial judge's remark that such interruptions had occurred. The judge noted post-trial that the record did not accurately reflect the magnitude and frequency of the defendant's interruptions and disruptive behavior.

that he would be a free man after the hearing. Upon Martin's assurances that he did not intend to escape, but rather desired to have a trial, and in light of the unsubstantiated risk and the number of law enforcement personnel present, the court declined to place any restraints upon Martin. The court did, however, again warn Martin that he would be gagged if his disorderly conduct continued.

Martin's defense at trial was that the attempted wounding charge was contrived. Martin's counsel sought to prove this by closely cross-examining each officer about his recollection of the details of what occurred after Martin's car was forced off the road. While Martin's counsel was cross-examining the first witness, Martin repeatedly stated aloud his dissatisfaction with counsel's questioning and vocally issued directives to counsel. Martin repeatedly interjected comments about the evidence and made other disruptive remarks. At various times throughout the proceedings, Martin made disparaging remarks about having to defend the charge.

After Martin disrupted the first witness' testimony, the trial judge dismissed the jury and ordered that Martin be shackled and gagged. Martin informed the court that he was dismissing his counsel and would represent himself. Two jurors had not left the courtroom when the order to gag Martin was given. Defense counsel moved for a mistrial and to be relieved as counsel. The trial judge denied both motions and resumed trial with Martin bound and gagged.

At some point during the ensuing proceedings, Martin's gag worked off and he was allowed to remain in the courtroom shackled but not gagged. Martin protested that he was unable to use his notes and consult with his counsel while still shackled. The judge denied his request to remove the shackles. Martin made a few additional comments, and the judge warned him that the gag would be replaced if he was again disruptive. The trial court did not explain or give a cautionary instruction to the jury regarding Martin's shackling and gagging, and none was requested.

After the Commonwealth rested, Martin's handcuffs were removed, but his leg shackles were not. The court stated that the leg shackles would not be removed because it then considered Martin a security risk. Martin did not testify.

Significantly, the trial judge noted in his post-trial rulings that the written transcript failed to capture adequately the intensity of Martin's disruptions which led to the judge's decision to bind and gag him.

■ A defendant is constitutionally entitled under both the United States and Virginia constitutions to confront the witnesses against him, U.S. Const. amend. VI; Va. Const. Art. I, § 8, to have a fair and impartial trial, *id.*, and to receive due process of law, U.S. Const. amend. XIV; Va. Const. Art. I, § 8. Each of these fundamental liberties is implicated when a defendant is required to stand trial while physically restrained by shackles or by a gag. *E.g.*, *Illinois v. Allen*, 397 U.S. 337 (1970); *Miller v. Commonwealth*, 7 Va. App. 367, 371, 373 S.E.2d 721, 723 (1988); *State v. Tolley*, 290 N.C. 349, 365, 226 S.E.2d 353, 365-66 (1976); *see also Vescuso v. Commonwealth*, 4 Va. App. 32, 36, 354 S.E.2d 68, 70, *aff'd on reh'g*, 5 Va. App. 59, 360 S.E.2d 547 (1987).

> Not only is it possible that the sight of shackles and gags might have a significant effect on the jury's feelings about the defendant, but the use of this technique is itself something of an affront to the very dignity and decorum of judicial proceedings that the judge is seeking to uphold. Moreover, one of the defendant's primary advantages of being present at the trial, his ability to communicate with his counsel, is greatly reduced when the defendant is in a condition of total physical restraint.

*Illinois v. Allen*, 397 U.S. at 344. When gagged and shackled, a defendant's ability to assist competently in his defense is restricted, his constitutional rights are prejudiced, even where the physical restraint is not complete, as where he is shackled only by the legs, and he may be distracted from the proceedings due to the confusion and embarrassment caused by being bound and gagged. *Eaddy v. People*, 115 Colo. 488, 491-92, 174 P.2d 717, 718 (1946); *State v. Tolley*, 290 N.C. at 366, 226 S.E.2d at 367 (shackling interfered with defendant's thought processes and ability to communicate with counsel); *see* Annotation, *Propriety and Prejudicial Effect of Gagging, Shackling, or Otherwise Physically Restraining Accused During Course of Trial*, 90 A.L.R.3d 17 (1979).

■ Unless appropriate steps are taken to conceal the fact that the defendant is wearing physical restraints, *see, e.g., Gray v. Commonwealth*, 233 Va. 313, 343, 356 S.E.2d 157, 174, *cert. denied*, 484 U.S. 873 (1987)(defendant entered and exited the witness stand outside the presence of the jury to keep them unaware of his leg shackles), the defendant may be impermissibly dissuaded from taking the witness stand in his own defense. Even if the fact that his restraint is concealed, however, because the defendant has been deprived of the free and calm use of all his mental faculties, *see State v. Borman*, 529 S.W.2d 192, 195 (Mo. Ct. App. 1975), his ability to be a competent witness to testify in his own behalf is nevertheless affected. *People v. Duran*, 16 Cal. 3d 282, 288, 545 P.2d 1322, 1326, 127 Cal. Rptr. 618, 622 (1976).

■ In addition to the constitutional confrontation concern that imposing physical restraints may effectively abridge a defendant's day in court, a defendant's due process and fair trial rights may be impinged. Viewing a defendant physically restrained tends to create prejudice in the minds of the jurors by suggesting that the defendant is a dangerous man whose guilt is a foregone conclusion or that he is uncontrollable and is not amenable to lesser, more civilized sanctions. *See id.* at 623, 545 P.2d at 1327; *Frye v. Commonwealth*, 231 Va. 370, 381, 345 S.E.2d 267, 276 (1986). Restraining an accused before the jury tends to deprive him of the presumption of innocence, particularly when the jury is not instructed that such action should, to the extent humanly possible, be disregarded in determining guilt. *State v. Tolley*, 290 N.C. at 364-65, 226 S.E.2d at 365. "The presumption of innocence, although not articulated in the constitution, is a basic component of a fair trial under our system of criminal justice." *Miller*, 7 Va. App. at 371, 373 S.E.2d at 723 (quoting *Estelle v. Williams*, 425 U.S. 501, 503 (1976)). "Indeed, it is the very cornerstone of our judicial system that every accused be afforded a fair and impartial trial." *Id.* "It follows, therefore, that the presumption of innocence requires the indicia of innocence," *State v. Tolley*, 290 N.C. at 365, 226 S.E.2d at 366, and courts must vigorously guard against those factors which may undermine those indicia or diminish a defendant's ability to mount a defense relying upon his presumed innocence. *Id.*; *Illinois v. Allen*, 397 U.S. at 343 (courts must indulge every reasonable presumption against the loss of constitutional rights).

 "However, the right to the indicia of innocence is a relative one." *United States v. Samuel*, 431 F.2d 610, 615 (4th Cir. 1970), *cert. denied*, 401 U.S. 946 (1971). So, too, are the defendant's right to be present in the courtroom, to confront witnesses and to assist counsel in the defense. *Illinois v. Allen*, 397 U.S. at 342-43; *Commonwealth v. Africa*, 466 Pa. 603, 626, 353 A.2d 855, 866 (1976). "The public also has an interest in the expeditious trial of persons accused of crime," and in having those trials conducted with safety and security. *United States v. Samuel*, 431 F.2d at 615; *see Illinois v. Allen*, 397 U.S. at 345 (defendant should not be allowed to profit from wrongful delays). A fair, efficient system of criminal justice requires the orderly conduct of cases free from spectacle and disruption. *Commonwealth v. Africa*, 466 Pa. 603, 619, 353 A.2d 855, 863 (1976).

It is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country. The flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated.

*Illinois v. Allen*, 397 U.S. at 343. Thus, in appropriate circumstances, such as where a contumacious defendant poses a risk of continued disorderly and disruptive behavior, his rights are relative to the competing interests of others present in the courtroom and of society at large. *See United States v. Samuel*, 431 F.2d at 615; *Frye*, 231 Va. at 381, 345 S.E.2d at 276; *Vescuso*, 4 Va. App. at 39, 354 S.E.2d at 74.

 The conduct of a trial and the imposition of measures necessary to ensure security and maintain decorum is left to the sound discretion of the trial court. Thus, when physical restraints are imposed on the disruptive and contumacious defendant, the question is whether the trial court abused its discretion.

We believe trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case. No one formula for maintaining the appropriate courtroom atmosphere will be best in all situations. We think there are at least three constitutionally permissible ways for a trial judge to handle an obstreperous defendant like [Martin]: (1) bind

and gag him, thereby keeping him present; (2) cite him for contempt; (3) take him out of the courtroom until he promises to conduct himself properly.

*Illinois v. Allen*, 397 U.S. at 343-44. A trial court must consider all the circumstances and the various interests in determining what measures to take in order to best obtain a fair and just result while maintaining the dignity of the proceedings and control of the courtroom. Among the numerous factors which may be considered, some of the more significant will be the nature and seriousness of the charge, the defendant's temperament and character, any threats to harm or cause a disturbance, the size and mood of persons who may attend the proceeding, and the adequacy and availability of alternative remedies. *Frye*, 231 Va. at 381, 345 S.E.2d at 276.

■ Although the decision by the trial court to impose restraints or take other measures does not require a formal hearing, and the basis for the decision need not be evidence formally offered and admitted at trial, *id.*, a record must be made by the trial court which reflects the reasons for the choice of measures taken. *State v. Tolley*, 290 N.C. at 368-69, 226 S.E.2d at 368. "Only in this manner can there be preserved a meaningful record from which a reviewing court may determine whether the trial court abused its discretion." *Id.* at 369, 226 S.E.2d at 368.

■ We are not dealing with a defendant who was found to be dangerous or a risk to flight. Here, Martin was not found to be a security risk when he first shackled; he was, instead, vocally disruptive. In response, the trial court bound and gagged him in full view of the jury.

Trying a defendant for a crime while he sits bound and gagged before the judge and jury would to an extent comply with that part of the Sixth Amendment's purposes that accords the defendant an opportunity to confront the witnesses at the trial. But even to contemplate such a technique, much less see it, arouses a feeling that no person should be tried while shackled and gagged except as a last resort.

*Illinois v. Allen*, 397 U.S. at 344.

[T]he constitution does not require or prohibit the adoption of any of these courses. The constitutional right to be present can be surrendered if it is abused for the purpose of frustrating the trial. Due process does not require the presence of the defendant if his presence means that there will be no orderly process at all. . . . [The] three methods [of dealing with a disruptive defendant] are not equally acceptable. In particular, shackling and gagging a defendant is surely the least acceptable of them. It offends not only judicial dignity and decorum, but also that respect for the individual which is the lifeblood of the law.

*Illinois v. Allen*, 397 U.S. at 350-51 (Brennan, J. concurring). Indeed, "[a] gagged defendant cannot communicate and cannot conduct a defense, and thus normally has no place in a court of law." *Commonwealth v. Africa*, 466 Pa. at 621, 353 A.2d at 864. "However, in some situations which we need not attempt to foresee, binding and gagging might possibly be the fairest and most reasonable way to handle a defendant." *Illinois v. Allen*, 397 U.S. at 344; *see* ABA Standards For Criminal Justice, *Special Functions of the Trial Judge* §§ 6-3.8,[3] 6-3.9 and, *Trial By Jury* § 15-3.1(b) and (c)[4] (2d ed. 1982, revised 1987).

We express our disapproval of binding and gagging as a method for the control of disruptive defendants in this case.

---

[3] STANDARD 6-3 8 THE DISRUPTIVE DEFENDANT
A defendant may be removed from the courtroom during trial when the defendant's conduct is so disruptive that the trial cannot proceed in an orderly manner. Removal is preferable to gagging or shackling the disruptive defendant. If removed, the defendant should be required to be present in the court building while the trial is in progress, be given the opportunity of learning of the trial proceedings through defense counsel at reasonable intervals, and be given a continuing opportunity to return to the courtroom during the trial upon assurance from the defendant of good behavior. The removed defendant should be summoned to the courtroom at appropriate intervals and invited to remain, with the offer to remain repeated in open court each time.

[4] STANDARD 15-3 1 CUSTODY AND RESTRAINT OF DEFENDANTS AND WITNESSES
(b) The trial judge should not permit a defendant or witness to appear at trial in the distinctive attire of a prisoner, unless specifically waived by the defendant.
(c) Defendants and witnesses should not be subjected to physical restraint while in court unless the trial judge has found such restraint reasonably necessary to maintain order. If the trial judge orders such restraint, the judge should enter into the record of the case the reasons therefor. Whenever physical restraint of a defendant or witness occurs in the presence of jurors trying the case, the judge should instruct those jurors that such restraint is not to be considered in assessing the proof and determining guilt.

> Our disapproval should not, however, be understood to imply that binding and gagging a disruptive defendant is never acceptable. If, for example, the trial court determined that the defendant's presence in the courtroom were crucial to his defense, binding and gagging him as long as he continued to disrupt the proceedings may be an appropriate measure. However, in most cases suitable alternatives should be available.

*Commonwealth v. Africa*, 466 Pa. at 620 n.13, 353 A.2d at 864 n.13; *see* ABA Standards Relating to the Function of the Trial Judge; ABA Standards Relating to the Judge's Role in Dealing with Trial Disruptions.

> I would add only that when a defendant is excluded from his trial, the court should make reasonable efforts to enable him to communicate with his attorney and, if possible, to keep apprised of the progress of his trial. Once the court has removed the contumacious defendant, it is not weakness to mitigate the disadvantages of his expulsion as far as technologically possible in the circumstances.

*Illinois v. Allen*, 397 U.S. at 351 (Brennan, J., concurring).[5]

The trial court did not make any finding that Martin was in contempt or impose lesser sanctions of fines or jail before binding and gagging him. No finding was made that Martin's presence was essential, or that alternatives were ineffectual or unavailable, before the trial court decided to have him bound and gagged. *See Illinois v. Allen*, 397 U.S. at 346 (finding that citation for contempt would have had no effect on defendant's conduct).

In *Gray v. Commonwealth*, 233 Va. 313, 356 S.E.2d 157, *cert. denied*, 484 U.S. 873 (1987), before ordering the defendant to wear leg shackles, the trial court made a finding that the defendant constituted a security risk. However, the defendant was accommodated in attending his trial with the least restrictions necessary; he was seated and allowed to take the witness stand outside of the jury's presence. The allegation that defendant's fair trial right had been infringed was held to be unfounded because the

---

[5] As an alternative, the defendant may view the trial via closed circuit camera and consult with his counsel at appropriately scheduled recesses.

jury was never aware of the defendant's restraints.

In *Frye v. Commonwealth*, 231 Va. 370, 345 S.E.2d 267 (1986), the trial court also made a finding that the defendant constituted a security risk, and given the security risk involved, some restraint was required if the defendant was to be in attendance. The trial court offered to dispel possible prejudice to the defendant by giving an instruction that leg shackles were merely a routine procedure. The defendant refused the cautionary instruction. When a defendant not only does not request an instruction, but denies the court's offer to give one, any error which may have been committed otherwise is waived. *See State v. Tolley*, 290 N.C. at 371, 226 S.E.2d at 370.

In *Miller v. Commonwealth*, 7 Va. App. 367, 373 S.E.2d 721 (1988), the trial court made no finding which justified shackling the defendant, who was being tried for a nonviolent crime. Miller's conviction was reversed.

We have noted the reasons which militate against the use of physical restraints upon a defendant. We also have identified considerations for using the least restrictive means or alternatives available to control a defendant, while protecting the public and court participants and maintaining the dignity of the proceedings. We similarly have noted the necessity for the trial judge to state for the record those findings which support the use of restraints, as opposed to other methods to achieve these ends. But, whatever means the court deems appropriate, it must consider whether the defendant's right to confrontation can be preserved, with or without his presence in the courtroom.

In order to preserve the issue for appeal, defense counsel must state in the record the objections to the method of restraint used and the basis for the objection. Rule 5A:18. In this case, defense counsel and Martin protested the shackling and gagging before the jury and Martin's inability to utilize his case materials and consult with his attorney in his defense. No reasons were stated why he needed to remain in the courtroom and stand trial under these circumstances. Although Martin was obnoxiously obstreperous, there was no evidence in the record that he was a security risk when the trial judge ordered him shackled, and the trial court did not make any finding to that effect. We hold that under these circumstances, it was an abuse of discretion to require Martin to

stand trial shackled and gagged. Therefore, the conviction is reversed, and the case is remanded for a new trial.

*Reversed and remanded.*

Barrow, J., and Benton, J., concurred.