## Staunton

### Thomas Carlton Wansley v. Commonwealth of Virginia.

September 11, 1964.

Record No. 5770.

Present, All the Justices.

*William M. Kunstler* and *L. W. Holt* (*Arthur Kinoy*, on brief), for the plaintiff in error.

*W. P. Bagwell, Jr.*, Assistant Attorney General (*Robert Y. Button*, *Attorney General*, on brief), for the Commonwealth.

WHITTLE, J., delivered the opinion of the court.

(In considering this case see Wansley v. Commonwealth—Record No. 5769, this day decided)

Thomas Carlton Wansley, a negro youth age 17, was tried as an

adult in the corporation court of the city of Lynchburg on February 7, 1963, under two indictments charging him with robbery and rape of one Annie Carter, a mature white woman. Wansley entered pleas of not guilty to both indictments and by agreement the cases were tried together. Upon the jury's verdict finding the accused guilty of rape and fixing his punishment at death, final judgment was entered on February 7, 1963. Final judgment was also entered on the jury's verdict finding him guilty of robbery and fixing his punishment at twenty years in the penitentiary. A writ of error and supersedeas were granted to review both judgments.

The accused being 17 years of age at the time of the alleged crimes, the Juvenile and Domestic Relations Court of the city of Lynchburg ordered an investigation to be made upon a petition charging the rape of Annie Carter pursuant to provisions of §§ 16.1-164 and 16.1-176 of the Code of Virginia 1950, as amended. See *Tilton* v. *Commonwealth*, 196 Va. 774, 85 S.E. 2d 368. Pursuant to this order, probation officer Strong interviewed the accused on December 10, 1962 and filed a comprehensive written report recommending that the accused be tried as an adult.

At the preliminary hearing on December 13, 1962, the juvenile court adjudged that Wansley could not be adequately controlled as a juvenile, ordered that he be tried as an adult, and certified the case to the corporation court to await action of the grand jury.

Reuben Lawson, a Roanoke attorney, was selected by Wansley and his mother to represent him. Lawson represented the accused at the preliminary hearing and at subsequent proceedings, including the trial in the corporation court on February 7, 1963, under the indictments charging the rape and robbery of Annie Carter.

There was no appeal from the judgment of the juvenile court and the indictments for rape and robbery were subsequently returned by the grand jury. On December 18, 1962 the judge of the corporation court appointed Dr. John G. Novak, a psychiatrist, to examine the accused for the purpose of determining whether his mental condition was such that he should be committed to a mental institution for observation. Dr. Novak's report indicated that, in his opinion, the accused was capable of standing trial.

On January 7, 1963 the accused, together with his counsel, appeared before the court and in response to request of counsel for the accused, the cases were set for trial on February 7, 1963.

Counsel for the accused had been unable to secure the services of a court reporter and on February 5, 1963 a motion for a continuance

was made in order to enable counsel to secure such services. This motion was overruled. Again on February 7, 1963, the day of trial, counsel filed a written motion seeking a continuance for the same reason, which, over the objection and exception of counsel, was overruled.

The cases proceeded to trial and the accused was found guilty of rape, his punishment being fixed at death, and judgment was entered on this verdict. He was likewise found guilty of robbery and his punishment fixed at twenty years in the penitentiary, upon which verdict judgment was also entered.

On February 28, 1963 attorney Lawson filed a motion for a new trial on the ground of after-discovered evidence. This motion was based upon a medical examination made by Dr. Gardner, which examination indicated the accused was suffering from mental disorders. This motion was overruled. Whereupon, trial counsel Lawson filed notice of appeal and 10 assignments of error on February 28, 1963. Attorney Lawson died suddenly on March 23, 1963.

On April 6, 1963 an additional assignment of error was filed by L. Holt, an attorney who had been employed to replace Lawson, and on April 8, 1963, 33 assignments of error were filed on behalf of the accused by his then attorney, Holt. On April 6, 1963 motion was made for a new trial by reason of death of trial counsel. This brought under consideration defendant's motion for a continuance in order to obtain a court reporter. The motion for a new trial was overruled in a written opinion handed down by the trial judge on May 2, 1963, which opinion held said motion had been filed more than 21 days after the final judgment of February 7, 1963, violative of the rules of court.

While there were 10 assignments of error filed on February 28, 1963 by trial attorney Lawson, we deem it necessary to consider but the one assignment, which we hold calls for a reversal and new trial. This assignment reads that: "The court erred in refusing to grant the continuance to enable defendant to obtain a court reporter".

The motion for a continuance is, of course, addressed to the sound discretion of the trial court and whether judicial discretion has been properly exercised depends upon the factual situation existing, the burden being upon the complaining party, the accused in this instance, to point out the facts and to lay the finger upon the error.

We are here confronted with the case in which an ignorant 17-year-old negro boy has been condemned to die in the electric chair. We have no record before us which would in any way enable us

to pass upon the proceedings which brought about this result. Out of the confusion created by the total absence of a transcript of the February 7 trial, a few simple uncontested facts emerge. The papers on file with the clerk of the trial court show that on February 5, 1963 counsel for the accused moved for a continuance of the trial on the ground that he had been unable to obtain the services of a court reporter. The clerk's digest of proceedings shows that this motion was denied, and that on February 7, the day of trial, the motion was renewed and again denied. The Commonwealth concedes that no reporter was in fact present at the trial. No stenographic transcript of the proceedings is in existence. Lawson, attorney for the accused who tried the case on February 7, became ill and died on March 23.

After the death of Lawson the accused obtained new counsel for the purpose of processing appeals under relevant statutes and rules of court. The absence of a trial transcript, coupled with the death of the trial attorney, presented a most difficult situation for the accused and his new counsel.

The right to file a petition for an appeal is governed by various provisions of Rule 5:1 of this court. Under Rule 5:1 § 3 (f) and (g), where the transcript of the proceedings in the trial court is relevant to the errors complained of, as it is in the present situation, counsel is required to submit a transcript of the proceedings to opposing counsel and to the trial court for certification as a part of the record on appeal. In this instance this possibility was foreclosed to petitioner and his new counsel because of the total absence of any trial transcript and because of trial counsel's death.

The Rule also provides that a narrative statement of the proceedings may be drawn up by counsel as a substitute for a verbatim stenographic transcript. Under this Rule both counsel for the appellant and appellee must agree on the accuracy of the statement and in the circumstances of disagreement the trial court determines the controverted questions and certifies the record for appeal. In the instant case it would be obviously impossible to resort to any procedure of mutual consent between attorneys present at the trial, as trial counsel for the accused was then dead.

Under our practice a litigant who seeks to petition the Supreme Court of Appeals for a writ of error must present a sufficient record on which the court can determine whether or not the lower court has erred. *Justis* v. *Young*, 202 Va. 631, 632, 119 S.E. 2d 255, 256, 257. The record must contain all evidence necessary and material for the appellate court to determine the existence of errors in the

trial court transcript. *Luhring* v. *Finley, Inc.*, 202 Va. 260, 261, 262, 117 S.E. 2d 126, 127.

The inability of the accused in this instance to prepare a sufficient record for this court was brought about by the absence of a court reporter and the circumstance of the death of the trial attorney, the combination of which prevented petitioner from complying with the rules.

It is suggested by the Commonwealth that a possible source for an accurate transcript of the trial of this case might have been found in a tape recording of the trial reportedly made by the Commonwealth attorney. A cursory examination of this transcription would show that the recording could not be considered an "adequate substitute" for a stenographic transcript or a "sufficient complete record of trial proceedings", indeed, it would hardly be possible for the attorney now representing the accused to vouch for the accuracy of the recording. See *Draper* v. *Washington*, 372 U.S. 487, 83 S. Ct. 774, 9 L. ed. 2d 899 (1963); *Chessman* v. *Teets*, 354 U.S. 156, 77 S. Ct. 1127, 1 L. ed. 2d 1253.

In the instant case human life is involved, indeed the life of an ignorant boy 17 years of age has been declared forfeited, and the question to be determined is whether or not the accused, who has been sentenced to suffer the extreme penalty, has had that fair and impartial trial guaranteed to him by our constitution. *Bobo* v. *Commonwealth*, 187 Va. 774, 779, 48 S.E. 2d 213, 215. With no transcript before us we are unable to determine this question. By reference to *Wansley* v. *Commonwealth*, Record 5769, this day decided, 205 Va. 412, 137 S.E.2d 865, it will be observed that a court reporter had been secured for that trial, held on February 12, 1963, only 5 days after this trial.

We hold that the trial court abused its discretion in not granting the continuance prayed for so as to enable accused to employ a court reporter for the purpose of recording the evidence and other incidents of the trial.

For the foregoing reason the verdict of the jury in each case is set aside, the judgments of the court reversed, and the cases are remanded for new trials.

*Reversed and remanded*