*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0127P (6th Cir.)
File Name: 04a0127p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

No. 02-6205

DON BROWN,
*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 02-20102—Julia S. Gibbons, Circuit Judge.

Argued: February 3, 2004

Decided and Filed: May 6, 2004

Before: NORRIS, GILMAN, and ROGERS, Circuit
Judges.

---

### COUNSEL

**ARGUED:** Stephen R. Leffler, LAW OFFICE OF
STEPHEN R. LEFFLER, Memphis, Tennessee, for
Appellant. Stephen P. Hall, ASSISTANT UNITED STATES
ATTORNEY, Memphis, Tennessee, for Appellee.
**ON BRIEF:** Stephen R. Leffler, LAW OFFICE OF
STEPHEN R. LEFFLER, Memphis, Tennessee, for

Appellant. Stephen P. Hall, ASSISTANT UNITED STATES
ATTORNEY, Memphis, Tennessee, for Appellee.

---

### OPINION

---

ALAN E. NORRIS, Circuit Judge. Defendant Don Brown
appeals from a jury verdict that found him guilty of a single
count of knowingly possessing a firearm despite a prior
felony conviction, in violation of 18 U.S.C. § 922(g).
Defendant testified at trial and conceded that he briefly had
his brother's .25 caliber pistol in his possession but contended
that he took it because his brother was intoxicated and he
wished to make certain that the gun was safely stored away.

On appeal defendant has designated four assignments of
error: 1) he should have been provided with street clothes
during the trial; 2) the district court erred in permitting
testimony that the firearm was loaded at the time that it was
confiscated from him; 3) the district court gave the jury an
improper instruction concerning the burden of proof with
respect to a defense of "necessity"; and 4) he was entitled to
a reduction for acceptance of responsibility despite his
decision to go to trial.

### I.

According to defendant's trial testimony, his troubles
stemmed from his decision to accompany his brother,
Timothy, on January 29, 2002, to a club in Memphis to
"check on [Timothy's] girlfriend." The brothers left around
9:30 that evening in Timothy's van, visited the club for 10 to
15 minutes, and then left when they failed to locate the
girlfriend. Although they did not drink at the club, they had
already been drinking beer that Timothy kept in the van.

Defendant went on to testify that, not long thereafter, Timothy "just got down on his accelerator and the van sped up and got away from him and he hit the under beam of the overpass right there at the interstate where you go off the off-ramps there." Timothy told defendant not to get out of the van, although it was clear that the front bumper was bent and the windshield cracked where defendant's head had struck it on impact. Timothy attempted to drive off despite the fact that a back tire went flat as they pulled away. According to defendant, he told his brother to stop a number of times but he refused. Defendant testified as follows with respect to the gun:

> . . . I looked down at the beer and stuff, I said, "I'm fixing to get out . . . ." Then I looked over and got the beer, I said, "You don't need this." And I noticed the pistol was in the little thing right there at the little cockpit thing, what you put cups and stuff at. And I reached and grabbed it. He was reaching for it, and I grabbed it from him like this here and got out the van. He was still, "Give me the gun, give me the gun." I said, "What you doing with this here in the first place," know what I'm saying. And so I got the gun and the beer and got out the van and he got out the van with me. I said, "Man, you don't need to have this stuff in here, you are already in enough trouble as it is," know what I'm saying.
>
>    . . . .
>
>    I was concerned that he was going to hurt hisself [sic] or somebody else, you know what I'm saying, driving the way he is. He was obviously drunk because he had the wreck. And I didn't know what he was going to do at that point in time because he refused to stop the van. So I got out, I was already out, and I took the beer and what's you call it, he constantly trying to follow me asking me for the gun and whatever. I said, "No, you don't need this." I said, "You either lock the van up and

> walk home with me or you get in there and go to sleep, but you don't need to drive."

Defendant went on to explain that he was concerned that his brother might have quarreled with his girlfriend, and he took the gun with the intention of placing it in his aunt's house for safekeeping.

Timothy did not take kindly to his brother's concerns. Instead, he stopped the van, jumped out, and approached Memphis police officer Brad Savage. According to Savage's trial testimony, "He told me that him and his brother had gotten into an argument in the van, and his brother jumped out of the van, grabbed a pistol and was walking westbound on Chelsea from Evergreen." This encounter occurred at about 11:15 p.m.

Timothy pointed his brother out to Savage, who radioed for help and then approached defendant:

> I got on my loud speaker, and I instructed [defendant] – He was carrying a 40-ounce bottle of beer, and I instructed him to put it down . . . . I told him to put his hands up on the wall at which time he did, and I approached him at that time.
>
>    . . . .
>
>    I then patted that pocket down. I could feel something, so I reached in there and there was a small caliber pistol in his pocket.

Savage also testified that defendant told him the location of the gun when asked.

Shortly thereafter, police officer Dwayne Johnson arrived on the scene. Johnson took possession of the pistol and emptied it. At trial, he testified that he removed a live round of ammunition from the gun's chamber and that the clip contained an additional five rounds.

A grand jury returned a one-count indictment on April 10, 2002, charging defendant with being a felon in possession of a firearm, 18 U.S.C. § 922(g). Prior to trial, the parties stipulated to the fact that defendant had previously been convicted of four felonies and to the fact that the firearm in question – a Bryco Arms .25 caliber pistol – had traveled across state lines. After a two-day trial, the jury returned a guilty verdict. Defendant received a sentence of 235 months of imprisonment, three years of supervised release, and a special assessment of $100.

## II.

### 1. Prison Clothing

On the first day of trial, defense counsel told the court that his client had tried to obtain clothes from his family but had received no response to his request. The judge replied, "If you've got a reasonable way of getting them here, you know, in a timely, reasonably timely way, I would by happy to wait, but it just doesn't seem like there is any basis for waiting under th[e current] circumstances." The court went on to note that, "[I]f at some later point Mr. Brown . . . is able to get some clothes here, I would be happy to allow him an opportunity to change, but of course . . . the jury will have already seen him . . . ." Other than expressing the general desire that his client have access to non-prison attire, defense counsel did not object to the district court's resolution of the problem, nor did he ask for a continuance.

In *Estelle v. Williams*, 425 U.S. 501 (1976), the Supreme Court held as follows:

> [A]lthough the State cannot, consistently with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes, the failure to make an objection to the court as to being tried in such clothes, for whatever reason, is sufficient to

negate the presence of compulsion necessary to establish a constitutional violation.

*Id.* at 512-13 (footnote omitted). In other words, a defendant's fundamental liberty interest under the Fourteenth Amendment prevents the State from denying the accused the option of wearing something other than prison garb. *Id.* at 503-04. However, the mere fact that a defendant appears in prison attire during his trial does not necessarily mean that his right to a fair trial has been compromised. As the Court observed, "The cases show . . . that it is not an uncommon defense tactic to produce the defendant in jail clothes in the hope of eliciting sympathy from the jury." *Id.* at 508. Accordingly, the only constitutional prohibition is that a defendant cannot be forced to wear prison clothes and, even then, he must object to that directive to preserve his claim.

Defendant concedes in his brief to this court that "[t]here is nothing in the record to indicate that the jurors were, in fact, affected by what they saw." Furthermore, he does not argue that the State compelled him to wear prison-issued clothing or prohibited him from obtaining other attire.

Under the circumstances, we conclude that there simply was no compulsion. If anything, the remarks that the district court addressed to defendant when he mentioned the issue prior to trial demonstrate a general willingness to accommodate him. Defendant did not otherwise object when the court determined that, in the absence of a viable plan to obtain clothing, it would begin the trial. This failure to object negates any claim of compulsion. *Estelle* at 512-13.

### 2. Testimony Concerning Whether the Pistol was Loaded

During trial, officer Savage testified that fellow officer Johnson "cleared the weapon" when he arrived at the scene. Defense counsel objected to testimony concerning whether or not the pistol at issue was loaded at the time it was

confiscated; in his view, that fact was "irrelevant." The court overruled the objection based on the following rationale:

> Well, it may not be relevant whether it's loaded or not for purposes of the legality or illegality of the conduct. On the other hand, the fact that it's loaded, and frankly, the defense [of necessity] you are trying to present, it may not have much to do with the likelihood of the factual scenario of either party, but it generally has something to do with the overall fact situation. So I mean it's relevant also.

This court reviews evidentiary rulings concerning relevance and admissibility for an abuse of discretion. *See United States v. Bonds*, 12 F.3d 540, 554 (6th Cir. 1993) ("We review the trial court's admission of testimony and other evidence under the abuse of discretion standard."). Under this standard, we take a "maximal view" of the evidence's probative effect and a "minimal view of its unfairly prejudicial effect." *United States v. Sassanelli*, 118 F.3d 495, 498 (6th Cir. 1997).

The statute of conviction reads in part as follows:

> It shall be unlawful for any person . . . (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g). Because the statute does not require that the firearm be loaded, defendant takes the position that the introduction of such evidence runs afoul of Federal Rule of Evidence 403 because its probative value was "substantially outweighed by the danger of unfair prejudice."

We disagree. The district court correctly recognized that the evidence had some relevance to defendant's necessity defense. Moreover, this evidence was not overly prejudicial: the fact that the gun was loaded bolstered defendant's argument that it was necessary to secure it temporarily from his brother. We find no abuse of discretion on the part of the district court in permitting the introduction of this evidence.

### 3. *Jury Instructions with Respect to Necessity Defense*

Defendant next maintains that the jury instruction explaining his affirmative defense of necessity improperly shifted the burden of proof to him. We review jury instructions as a whole to determine whether they fairly and adequately submitted the issues and applicable law to the jury. *United States v. Williams*, 952 F.2d 1504, 1512 (6th Cir. 1991).

After instructing the jury on the government's burden of proof, the district court gave it the following guidance concerning defendant's affirmative defense:

> If you conclude that the government has proved beyond a reasonable doubt that the defendant committed the crime as charged, you must then consider whether the defendant should nevertheless be found not guilty because his actions were justified by necessity. The defendant's actions were justified and therefore he is not guilty only if the defendant has shown by a preponderance of the evidence that each of the following five elements is true. . . .

> The five elements which the defendant must prove by a preponderance of the evidence to establish the defense are as follows: Number one, the defendant was under an unlawful present imminent and impending threat of such nature as to induce a well-grounded fear of death or serious bodily injury to himself or another. And two, the defendant had not recklessly or negligently placed

himself in a situation in which it was probable that he would be forced to choose the criminal conduct. And three, the defendant had no reasonable legal alternative either before or during the event to violating the law, that is, he had no reasonable opportunity to avoid the threat to harm. And number four, a reasonable person would believe that by committing the criminal action he would directly avoid the threat and harm. And five, the defendant did not maintain the illegal conduct any longer than absolutely necessary.

This court has held that "a defense of justification may arise in rare situations" when the charge of being a felon in possession of a firearm has been alleged. *United States v. Singleton*, 902 F.2d 471, 472 (6th Cir. 1990). However, this defense must be "construed very narrowly." *Id.* In *Singleton*, we expressly adopted the requirements imposed by the Fifth Circuit upon a defendant in order to make out such a defense. *Id.* (adopting *United States v. Gant*, 691 F.2d 1159 (5th Cir. 1982)). These requirements track those set forth by the district court in its jury instructions.

Defendant argues that the elements of the affirmative defense, which he was obliged to prove by a preponderance of the evidence, go to an essential element of the offense that the government must prove: that he "knowingly possessed the firearm." It is axiomatic, of course, that the government must prove all elements of a crime beyond a reasonable doubt. *See In re Winship*, 397 U.S. 358, 364 (1970). Furthermore, if an affirmative defense bears a necessary relationship to an element of the charged offense, the burden of proof does not shift to defendant. *Patterson v. New York*, 432 U.S. 197, 210-11 (1977). However, where, as here, defendant asserts an affirmative defense that does not negate any element of the offense, he may be required to prove that defense by a preponderance of the evidence. *Id.* In this case, a felon in possession charge only requires proof of general, rather than specific, intent. *United States v. Bennett*, 975 F.2d 305, 308 (6th Cir. 1992) (voluntary intoxication not an

affirmative defense in § 922(g) prosecution). Proving necessity does not necessarily undercut the element of "knowing possession;" one can knowingly possess a firearm but still do so under circumstances of necessity that justify an otherwise illegal act.

In our view, the district court correctly instructed the jury in light of *Singleton*, which specifically placed the burden to show the elements of the necessity defense on defendant. *Singleton*, 902 F.2d at 472 (stating "a defendant must show" before listing the requirements of the necessity defense).

### 4. Acceptance of Responsibility

Finally, defendant contends that he should have been accorded a reduction to his offense level based upon acceptance of responsibility. U.S.S.G. § 3E1.1. Application Note 2 to this section states that it should not generally apply to a defendant "who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." U.S.S.G. § 3E1.1, comment. (n.2). We generally review the district court's judgment on this issue for clear error. *United States v. Webb*, 335 F.3d 534, 538 (6th Cir. 2003). Even when this Guideline's section is applied to uncontested facts, we review the lower court's decision with deference, not *de novo*. *Id.* at 537 (noting a change in the circuit's standard of review in light of *Buford v. United States*, 532 U.S. 59, 63-66 (2001)). Here, however, the facts were contested and therefore a clear error standard of review applies.

Defendant takes the position that he never denied his felony convictions, possession of a firearm, or the fact that the firearm had traveled in interstate commerce. He sought a trial in order to assert an affirmative defense, which does not negate an element of the crime.

In denying the benefit of acceptance of responsibility, the district court reasoned as follows:

> . . . I do not think Mr. Brown is entitled to points for acceptance of responsibility. I think that possibly in a given case an individual who asserted a defense such as this might . . . still be entitled to points for acceptance of responsibility, but when I – when one evaluates Mr. Brown's credibility, the fact that his explanation of events was not accepted by the jury and, frankly, I did not find Mr. Brown to be credible under all the circumstances of the case. I don't think he can be given points for acceptance of responsibility because he did not in my judgment fully accept responsibility.

The district court properly recognized that putting the government to its burden did not automatically preclude a reduction under § 3E1.1; it merely found that the facts as adduced at trial made such a finding inappropriate in this case, which is precisely the kind of determination that we review for clear error. No such error occurred in this case.

### III.

For the foregoing reasons, we **affirm** the judgment of the district court.