PUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Beales and Decker
Argued at Norfolk, Virginia

ROBERT ALLEN WILKINS

OPINION BY
v.     Record No. 0682-14-1       JUDGE RANDOLPH A. BEALES
MAY 12, 2015

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
Dean W. Sword, Jr., Judge

Sonya Weaver Roots (Weaver Law Practice, PLLC, on brief), for
appellant.

Robert H. Anderson, III, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Robert Allen Wilkins (appellant) was convicted by a jury of third-offense petit larceny, a

Class 6 felony under Code § 18.2-104. Appellant argues that the trial court "erred by allowing the

jury to proceed when [appellant] was wearing his jail uniform."

I. Background

On appeal, we consider the circumstances in the record in the light most favorable to the

Commonwealth, "as we must since it was the prevailing party" in the trial court. Riner v.

Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004). The record here contains only a

partial, excerpted transcript of appellant's October 30, 2013 jury trial in the circuit court. The

transcript abruptly begins with defense counsel's statements that "the jail, or whoever it is, didn't

accept [appellant's] pants" that had been presented to the jail administrators and that "I don't have

anything that will fit him." The trial judge, seeking alternatives to appellant appearing before the

jury in jail clothing, noted that "the public defender I think has a clothes closet, for lack of a better

way to describe it, that they might could help you out." The transcript establishes that the trial judge permitted a recess of some duration, although it is unclear from the record whether defense counsel acted on the trial judge's suggestion concerning the Public Defender's "clothes closet."

After the recess concluded and some preliminary matters were discussed, defense counsel told the trial judge:

> I would have an objection to Mr. Wilkins being brought before the jury. He's wearing Portsmouth City Jail uniform clothes. They are kind of like a green, sort of scrub outfit. He is wearing black sneakers that I think they have the inmates wear. He's got a visible bracelet on his left arm.
>
> Mr. Wilkins' lady friend and I spoke a number of times. She indicated she brought him clothing. First she brought it too soon. The jail wouldn't accept it. Then she brought him clothes this morning. They wouldn't accept them. It had something to do with the hems taped up or something like this.

The trial judge ultimately overruled defense counsel's objection. During the course of the jury trial, appellant departed the courtroom at his own request after engaging in disruptive behavior – including a threat to kill his defense counsel. The trial court then found:

> I think he failed to produce clothes, which falls into what I view as a pattern of trying to avoid going to trial in this matter. This case has been pending since April. It has been continued three times. There ha[ve] been three lawyers, because the defendant has been dissatisfied with counsel. And even as late as yesterday he tried to get a continuance for what the Court viewed as no good reason. Obviously, he didn't get a continuance, and I think the issue with the jail clothes is part of that pattern.

## II. Analysis

On appeal, the conduct of a trial is generally reviewed for abuse of discretion, taking into account "the rights of the accused to a fair and impartial trial." Miller v. Commonwealth, 7 Va. App. 367, 371, 373 S.E.2d 721, 723 (1988). "[O]nly when reasonable jurists could not differ can we say an abuse of discretion has occurred.'" Grattan v. Commonwealth, 278 Va. 602, 620, 685 S.E.2d 634, 644 (2009) (quoting Thomas v. Commonwealth, 44 Va. App. 741, 753, 607 S.E.2d

738, 743, <u>adopted</u> <u>upon</u> <u>reh'g</u> <u>en</u> <u>banc</u>, 45 Va. App. 811, 613 S.E.2d 870 (2005)).  Furthermore, "'the burden is on the appellant to present to us a sufficient record from which we can determine whether the lower court has erred in the respect complained of.  If the appellant fails to do this, the judgment will be affirmed.'"  <u>Smith v. Commonwealth</u>, 16 Va. App. 630, 635, 432 S.E.2d 2, 6 (1993) (quoting <u>Justis v. Young</u>, 202 Va. 631, 632, 119 S.E.2d 255, 256-57 (1961)).

Appellant argues that the trial court committed reversible error under <u>Estelle v. Williams</u>, 425 U.S. 501 (1976), a case that involved very different circumstances than those here.  In <u>Estelle</u>, the defendant requested to wear to trial his own clothes that were already being kept at the local jail where he was being held; however, the jail officials denied this request, apparently having offered no reason for doing so.  <u>Id.</u> at 502.  The defendant in <u>Estelle</u> instead "appeared at trial in clothes that were distinctly marked as prison issue."  <u>Id.</u>  The United States Supreme Court rejected the defendant's claim for habeas relief, holding that he failed to object at trial, while also explaining that "an accused should not be compelled to go to trial in prison or jail clothing because of the possible impairment of the presumption [of innocence]" that is "so basic to the adversary system."  <u>Id.</u> at 504.

The Supreme Court of Virginia addressed the <u>Estelle</u> decision in <u>Jackson v. Washington</u>, 270 Va. 269, 619 S.E.2d 92 (2005), which like <u>Estelle</u> was a habeas corpus claim.  Jackson alleged the ineffective assistance of counsel.  In <u>Jackson</u>, the Supreme Court stated, "Beyond question, an accused, consistent with the constitutional right to a fair trial, may not be compelled to stand trial before a jury wearing clearly identifiable jail or prison clothes."  <u>Id.</u> at 276, 619 S.E.2d at 95.  The Supreme Court explained in <u>Jackson</u> that "being compelled to appear before a jury in clearly identifiable jail or prison clothes may undermine the fairness of the fact-finding process and, thus, violate the accused's fundamental right to a presumption of innocence while furthering no essential state interest."  <u>Id.</u>  The Supreme Court added that it had not previously considered a case assessing

"the impact upon a criminal trial of an accused being compelled to stand trial before a jury in jail or prison clothes," which "suggest[ed] the sensitivity and respect by the bench and bar of this Commonwealth for an accused's right to a fair trial" and caused the Supreme Court to infer that "the incidence of such occurrence is rightfully rare." Id. at 279, 619 S.E.2d at 97. However, the Supreme Court also stated that there is no "*per se* rule" in cases applying Estelle. Id. at 276, 619 S.E.2d at 95. As the Supreme Court explained in Jackson, "Whether an accused's due process rights have been violated turns on the determination whether his being made to appear before the jury in jail or prison clothes is the result of actual state compulsion, a determination the reviewing court makes on a case-by-case basis." Id.

Therefore, on appeal, this Court must address – based on the particular circumstances in this case – whether appellant was compelled to appear before the jury in clearly identifiable jail clothing. Furthermore, as stated *supra*, it is appellant's burden to present this Court with a record complete enough to demonstrate that the trial court abused its discretion in this manner. See Wansley v. Commonwealth, 205 Va. 419, 422, 137 S.E.2d 870, 872-73 (1964) (stating that the appellant "must present a sufficient record on which the court can determine whether or not the lower court has erred"). "The record must contain all evidence necessary and material for the appellate court to determine the existence of errors in the trial court transcript." Id. at 422-23, 137 S.E.2d at 873.

Limiting our review simply to the material contained in the record on appeal, as we must, this Court cannot conclude the circumstances in the record that appellant has presented to us rise to the "particular evil proscribed" in Estelle – i.e., *compelling* the defendant to appear at a jury trial wearing *distinctly identifiable* jail clothing. 425 U.S. at 505; see Black's Law Dictionary 276 (7th ed. 1999) (defining "compel" as "[t]o cause or bring about by force or overwhelming pressure").

First, the record on appeal is insufficient to establish "actual state compulsion." Jackson, 270 Va. at 276, 619 S.E.2d at 95. We observe that, unlike in Estelle, the jail administrators here

- 4 -

gave reasons for rejecting appellant's request to wear clothing of his own at trial. Appellant's "lady friend," as defense counsel described her, first brought appellant's clothing to the jail too soon for the jail's administrators to take possession of it and then came to the jail on the day of trial with pants that had taped hems. At sentencing, the Commonwealth stated that appellant's personal clothing that his girlfriend had tried to deliver was "inappropriate." Nevertheless, the excerpted trial transcript that is all we have before us on appeal from the trial does show that the trial judge "afforded [appellant] a reasonable opportunity to procure street clothes" by ordering a recess so that defense counsel could explore alternatives to the jail clothing, such as suggesting that defense counsel attempt to get clothing from the Public Defender's Office. United States v. Hurtado, 47 F.3d 577, 581 (2d Cir. 1995). Whether defense counsel actually pursued that alternative – or other potential alternatives – cannot be ascertained from the partial transcript in the record on appeal.[1]

"[A] n appellate court's review of the case is limited to the record on appeal." Turner v. Commonwealth, 2 Va. App. 96, 99, 341 S.E.2d 400, 402 (1986). The dissent claims that the Supreme Court "in Estelle makes it clear that if a defendant objects to facing a jury in jail attire the burden is on the Commonwealth, *not* on the defendant, to demonstrate *from the record* that a reasonable opportunity to secure alternative clothing was provided." Contrary to this assertion,

---

[1] For example, the record on appeal that appellant provides fails to indicate: (1) whether the jail administrators would have accepted appellant's pants if he had simply removed the tape from the hems; (2) whether, given defense counsel's statement in the trial court that the jail administrators rejected the pants brought by appellant's girlfriend (because the hems were taped), appellant could have worn the rest of the outfit that his girlfriend had brought him; (3) what became of the clothes that appellant was wearing when he was arrested, and whether he could have worn those clothes to trial; (4) whether the clothing appellant wore at trial was "distinctly marked" as Portsmouth City Jail clothing; (5) whether appellant's girlfriend could have brought another set of clothing during the recess that the trial judge had permitted: and (6) whether appellant even tried to contact his girlfriend or anybody else during the recess to ask for a set of clothing. While appellant's counsel on appeal (a different attorney than his trial counsel) made several assertions during oral argument on these subjects, counsel's assertions were made outside of the record on appeal, which counsel seemed to concede. This Court "cannot base its decision upon appellant's petition or brief, or statements of counsel in open court." Smith, 16 Va. App. at 635, 432 S.E.2d at 6.

however, nothing in Estelle indicates that the Court made such a clear holding, or in fact even reached this issue. The facts in Estelle are quite different from the instant case, most notably that the defendant in Estelle never raised an objection to being tried in jail clothes. In addition, as explained *infra*, in this case, we do have affirmative factfinding in the record on appeal that indicates the trial court's reasons for ultimately denying appellant's objections after granting a recess to see if civilian clothes could be found. Therefore, based on the record here, we cannot conclude that compulsion occurred within the meaning of Estelle. See United States v. Henry, 47 F.3d 17, 22 (2d Cir. 1995) ("We see no compulsion, as the court did not affirmatively prevent Henry from wearing civilian clothing, but simply refused to excuse Henry's failure to make proper arrangements despite receiving ample notice and opportunity.").[2]

Second, viewing the circumstances in the record here in the light most favorable to the Commonwealth (as we must since it was the prevailing party below), the record fails to establish that appellant's clothing at trial actually was clearly identifiable as jail clothing. See Estelle, 425 U.S. at 502 ("As a result, respondent appeared at trial in clothes that were distinctly marked as prison issue."); see also United States v. Harris, 703 F.2d 508, 509 (11th Cir. 1983) ("Harris was clothed in a white T-shirt and white jeans that were marked with the words 'Department of Corrections' or similar lettering."). The record here contains only a somewhat vague description of appellant's clothing (i.e., a green scrub outfit, black sneakers, and a bracelet), and the trial judge openly expressed skepticism over whether the jury would even identify appellant's clothing as being a jail uniform. See Knott v. State, 708 A.2d 288, 295 (Md. Ct. App. 1998) ("Implicit in that

---

[2] In fact, while the excerpted trial transcript reflects that defense counsel raised an objection under Estelle, it does not reflect that defense counsel made any request for a continuance after the objection was overruled. Defense counsel instead stated, "I'm ready to try the case." Furthermore, while appellant told the trial judge that he was not ready to proceed with the jury trial, the transcript reflects that this statement was made in the context of his complaints about defense counsel. The trial judge asked appellant, "Is there any other reason that you are not ready to go to trial this morning?" Appellant replied, "Other than I wrote the bar on [defense counsel], no."

analysis [under <u>Estelle</u>] is that jurors could recognize Knott's garb as that of a prisoner."). Unlike this Court, which "reviews only a cold record," <u>Harris v. Woodrum</u>, 3 Va. App. 428, 433, 350 S.E.2d 667, 670 (1986), the trial judge was actually present at the proceedings and his observations are entitled to deference on appeal. <u>See generally</u> <u>Bradley v. Commonwealth</u>, 196 Va. 1126, 1136, 86 S.E.2d 828, 834 (1955); <u>cf.</u> <u>Henry</u>, 47 F.3d at 22 ("We likewise defer to the [trial] court's finding that a jury would not readily identify Henry's MCC denim as prison issue.").

Third, in this case, the trial judge plainly found as fact that appellant – who had churned through several court-appointed attorneys and had already obtained several continuances – was acting in bad faith. The trial judge made a specific finding of fact that appellant's failure to produce appropriate clothing to wear at trial "falls into what I view as a pattern of trying to avoid going to trial in this matter."[3] Under settled law, a trial court's finding of fact is reviewed "with the highest degree of appellate deference," <u>Thomas v. Commonwealth</u>, 48 Va. App. 605, 608, 633 S.E.2d 229, 231 (2006), and will be disturbed only if it was plainly wrong or without evidence to support it, <u>Davis v. Commonwealth</u>, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002); <u>see</u> <u>Logan v. Commonwealth</u>, 279 Va. 288, 292, 688 S.E.2d 275, 278 (2010) (stating that findings relating to bad faith "are binding upon appeal unless they are plainly wrong or without evidence to support them"). The record on appeal in this case fails to establish that the trial judge's finding of bad faith was plainly wrong or without evidence to support it.

Here, the trial judge in his findings from the bench expressly linked appellant's course of conduct during the entirety of the trial proceedings with appellant's objection to proceeding to trial

---

[3] In <u>Morrissett v. Commonwealth</u>, No. 1296-98-1, 1999 Va. App. LEXIS 287, at *7 (Va. Ct. App. May 18, 1999), an unpublished decision of this Court, the defendant did not prevail in an assignment of error alleging a violation of <u>Estelle</u> where "[t]he record suggest[ed] that Morrisett was attempting to delay trial." The circumstances in this case are not just suggestive of an attempt by appellant to delay trial – rather, the trial judge here made that very finding of fact.

in jail clothes.[4] The trial judge noted that appellant had gone through several court-appointed

attorneys and had been granted several continuances. The record on appeal does not address the

nature of those continuances. However, the trial judge also found that appellant had requested a

continuance the day before trial for "no good reason." Furthermore, the excerpted transcript of trial

reveals that appellant acted in a disruptive manner on the trial date – requesting (while the jury was

out of the courtroom) to leave the courtroom several times, accusing the trial judge of participating

in a conspiracy, and threatening in open court to kill his defense counsel. Outside of the presence of

the jury, defense counsel told the trial judge that appellant also threatened him during a recess,

saying, "Be careful. It is dangerous out there, very dangerous out there." Moreover, following the

announcement of the jury's sentencing verdict, appellant left the courtroom after saying, "My chest.

My chest." After the jury was relieved of its duties, defense counsel said that he hoped appellant's

"apparent episode was more drama." The trial judge – who, of course, had witnessed all of

appellant's behavior – replied, "He didn't look sick to me. He just looked like he wanted a ride."

The trial judge's observations about appellant's conduct during the course of the entire

litigation provide context for the trial judge's finding that appellant's complaint about wearing jail

attire was part of appellant's pattern of acting in bad faith. Furthermore, in addition to the trial

judge's remarks about appellant's disruptive conduct during the litigation (which appellant has not

---

[4] In Martin v. Commonwealth, 11 Va. App. 397, 406, 399 S.E.2d 623, 628 (1990), this
Court stated that when a trial court requires that a defendant be shackled or otherwise restrained
in front of a jury, "a record must be made by the trial court which reflects the reasons for the
choice of measures taken." This case is distinguishable from Martin. In Martin, the defendant
was actually shackled and gagged. Id. at 402, 399 S.E.2d at 625. Here, however, appellant was
simply wearing a "green, sort of scrub outfit," "black sneakers," and a bracelet—attire that the
trial judge, who saw the outfit, wondered whether it would even be clearly identifiable to a jury
as jail clothing. Nevertheless, after permitting a recess to see if appropriate civilian clothes could
be readily obtained for appellant, the trial court found that appellant's failure to obtain acceptable
civilian clothing was the result of bad faith and part of appellant's pattern of trying to delay
going to trial in this matter. Thus, the basis for the trial court's decision to proceed with trial
even though appellant had not obtained appropriate civilian clothing, is set forth in the record.

disputed on appeal), the record indicates that the only potential defense witness in the guilt phase of the trial had already left the courthouse after being told that "this [case] was going to be continued" – even though defense counsel to that point had only told appellant that he was "going *to try* to get this continued."[5] (Emphasis added). Based on this circumstance, a reasonable jurist could further infer that appellant was attempting to use defense counsel's objection to appellant's attire in order to gain yet another continuance following the departure of this potential defense witness.

As an appellate court, we do not reverse the trial court's findings of fact unless they are plainly wrong or without evidence to support them. Given the inadequate, truncated record before us on appeal, we cannot say that the trial judge's findings of fact – including its finding of bad faith – are plainly wrong and, as discussed *supra*, we certainly cannot say there is no evidence to support them.

Therefore, based on the totality of the circumstances in this particular appeal, we conclude that the record on appeal does not support appellant's claim that the trial court committed reversible error under Estelle. Accordingly, we affirm appellant's conviction. We deny as moot the Commonwealth's motion for summary affirmance, which only applies to appeals of right. See Rule 5A:27.

Affirmed.

---

[5] It is not clear from the record who told the defense witness that the case was going to be continued.

Humphreys, J., dissenting.

The appellant in this case was tried and convicted by a jury for stealing deodorant, soap, and "wave caps" from Wal-Mart as a third offense petit larceny for which the jury recommended the maximum sentence of five years' imprisonment. Appellant may in fact be guilty of that offense and merit the punishment recommended, but on the record before us, I do not believe that it can be seriously argued that he received a fair trial. For the following reasons, I respectfully dissent from the majority's analysis and conclusion that the trial court did not err under Estelle v. Williams, 425 U.S. 501 (1976), when it compelled appellant to appear before a jury wearing a "Portsmouth City Jail" prisoner uniform.

I.

Compelling a defendant to stand trial before a jury in prison or jail clothing undermines the integrity of the fact-finding process and diminishes the perceived fairness of the judicial system as a whole. See Estelle, 425 U.S. at 504-05. Specifically, such compulsion compromises the jury's ability to engage in neutral fact-finding and impairs the presumption of innocence that lies at the foundation of our adversary system. See id. In explaining why compelling a defendant to appear in prison clothing before a jury contravenes the Fourteenth Amendment's guarantee of a fair trial, the United States Supreme Court observed that "the constant reminder of the accused's condition implicit in such distinctive, identifiable attire may affect a juror's judgment." Id. "The defendant's clothing is so likely to be a continuing influence throughout the trial that . . . an unacceptable risk is presented of impermissible factors coming into play." Id. at 505. "Unlike physical restraints," which are permitted if necessary for security reasons under Illinois v. Allen, 397 U.S. 337, 344 (1970), "compelling an accused to wear jail clothing furthers no essential state policy." Estelle, 425 U.S. at 505. The fact "[t]hat it may be more

convenient for jail administrators, a factor quite unlike the substantial need to impose physical restraints upon contumacious defendants, provides no justification for the practice." Id.

As the majority correctly acknowledges, the Virginia Supreme Court has held that whether an accused's due process rights have been violated "turns on the determination whether his being made to appear before the jury in jail or prison clothes *is the result of actual state compulsion*." Jackson v. Washington, 270 Va. 269, 276, 619 S.E.2d 92, 95 (2005) (emphasis added). Whether the accused is tried before a jury in jail attire as the result of state compulsion is "a determination the reviewing court makes on a case-by-case basis." Id.

Because "the particular evil proscribed is compelling a defendant, *against his will*, to be tried in jail attire," a defendant may not remain silent and willingly stand trial in prison attire and then claim error on appeal. Estelle, 425 U.S. at 507 (emphasis added). Thus, "if the accused did not formally object to standing trial in jail or prison clothes or otherwise make known to the trial court that he desired to wear civilian clothes during his trial, he was not *compelled* to stand trial in jail clothes." Jackson, 270 Va. at 276, 619 S.E.2d at 95 (emphasis added). However, if a defendant does formally object, the trial court *must* provide him with a reasonable opportunity to obtain alternate attire. Implicit in the reasoning articulated in Estelle is the principle that absent the opportunity to pursue the availability of alternative clothing, the Commonwealth is functionally compelling the defendant to stand trial before a jury in jail attire. Without such an opportunity, the defendant is presented with the Hobson's Choice of either undermining his presumption of innocence by appearing before the jury in jail clothing or abandoning his constitutional right to be present at trial and face his accusers. See, e.g., State v. Garcia-Contreras, 953 P.2d 536 (Ariz. 1998) (holding that the trial court's refusal of a continuance plainly forced the defendant to choose between two equally objectionable alternatives: appear in prison clothes or waive his right to be present for jury selection). Accordingly, if a defendant

makes an affirmative objection to being tried before a jury in identifiable jail or prison attire (as the record clearly reflects that appellant did in this case), a trial court must ensure that the defendant has a reasonable *opportunity* to obtain civilian clothing.[6] This rule is particularly important in light of the fact that no state interests are impinged upon by providing such a reasonable opportunity. This rule is consistent with the United States Supreme Court's command that "courts must indulge every reasonable presumption against the loss of constitutional rights." Allen, 397 U.S. at 343.

## II.

Applying these principles to this case, I reach a conclusion contrary to that of my colleagues in the majority. I would hold that the record does not support a finding that the trial court provided appellant with a reasonable opportunity to secure civilian attire. The record reflects that on two separate occasions before trial, appellant's girlfriend attempted to bring clothing to the jail for him to wear for his trial. On both occasions, jail officials refused to accept the clothing for reasons that, while clear, lack any context in this record to determine that they were objectively reasonable. Upon appellant's objection to wearing his jail uniform during his

---

[6] I do not suggest that a trial court has any obligation to *provide* alternative clothing for a defendant—only an obligation to provide a defendant a *reasonable opportunity* to procure alternative clothing for himself. See, e.g., United States v. Williams, 641 F.3d 758, 767 (6th Cir. 2011) (holding that the district court was not required to furnish alternate clothing for the defendant) (citing United States v. Brown, 367 F.3d 549, 554 (6th Cir. 2004) (concluding that proceeding in prison clothing did not violate the defendant's rights where the court was willing to wait for family members to bring other clothing, but they failed to do so)). In Williams, the Sixth Circuit held that the district court's failure to provide Williams with funds to purchase clothing did "not amount to compelling him to appear in prison clothing in violation of his constitutional rights." Id. "[B]ecause the district court would have allowed Williams to change into other clothing if someone provided it for him, it did not force him to appear in prison attire and did not violate his constitutional right to a fair trial." Id. I would decline to embrace the rule adopted in some jurisdictions that go beyond providing a defendant with an opportunity to obtain civilian clothes, but rather require a trial court to furnish the accused with civilian attire if he cannot do so himself. See, e.g., State v. Herrera, 897 A.2d 1085, 1093 (N.J. App. Div. 2006) (holding that a trial judge should not require an indigent defendant to go to trial in his prison garb unless and until the judge determines that the defendant was offered, and rejected, civilian clothes that were reasonable and adequate under the circumstances).

jury trial, the trial court refused to permit more than a short recess, which the record implicitly reflects was measured in mere minutes, to permit appellant's counsel to discuss with the public defender—who was apparently present in the courtroom but not involved in appellant's case— the possibility of acquiring clothing from items maintained by the public defender's office. This effort was fruitless for reasons not clear in the record, and the trial court then required appellant to face the jury in a "Portsmouth City Jail" uniform.

As a preliminary matter, I disagree with the majority's initial supposition that evidence absent from the record suggesting that appellant did not explore more alternatives to procure civilian clothing than he did, implicitly supports a presumption that the trial court's actions must have been reasonable. The Supreme Court's reasoning underlying its holding in Estelle makes it clear that if a defendant objects to facing a jury in jail attire, the burden is on the Commonwealth, *not* on the defendant, to demonstrate *from the record* that a reasonable opportunity to secure alternative clothing was provided.[7]

In Cokes v. Commonwealth, 280 Va. 92, 98, 694 S.E.2d 582, 585 (2010), the Virginia Supreme Court held that the trial court abused its discretion in denying the defendant's motion to withdraw his waiver of a jury trial because the record was devoid of evidence that granting the motion would have resulted in an unreasonable delay of the trial. Specifically the record did not establish whether (1) Cokes's request could have been easily accommodated, (2) whether the motion was merely a delaying tactic, (3) the number of witnesses who would be inconvenienced by a continuance, or (4) the difficulty rescheduling would present to those witnesses. Id. The Court explained that "[i]nstead of establishing that granting Cokes'[s] motion 'would unduly

---

[7] The majority argues that this rule is not clear from the holding of Estelle because the facts are distinguishable. However, as explained *supra*, the requirement that a trial court must provide a defendant with a reasonable opportunity to obtain civilian clothes if he makes an objection to standing trial in his jail attire is implicit in the reasoning underlying Estelle and its progeny. Absent such an opportunity, the defendant is effectively being compelled by the Commonwealth to proceed to trial in jail attire—the precise "evil" condemned in Estelle.

delay the trial or would otherwise impede justice,' the record leaves this Court to speculate whether Cokes'[s] request could have been honored in a timely fashion, thereby vindicating his constitutional and statutory rights without impeding the administration of justice." Id. (quoting Thomas v. Commonwealth, 218 Va. 553, 555, 238 S.E.2d 834, 835 (1977)).

Similarly, and contrary to the unsupported assertion of the majority, the record in this case does not establish that the trial court provided appellant with any meaningful opportunity to procure civilian clothing. Despite the uncontradicted evidence in the record that appellant made two attempts before trial to procure his own clothing, the majority impermissibly speculates that the lack of additional effort on appellant's part, coupled with a brief recess to discuss borrowing clothing from an uninvolved third party, suggests that the trial court acted reasonably. I decline to join in both the unsupported speculation of my colleagues and in the peculiar conclusion they reach as a result—that speculating evidence into existence equals the provision of due process. Because appellant clearly objected to standing trial in jail attire, and further, as more fully explained below, the record fails to affirmatively establish that appellant was provided with a reasonable opportunity to obtain non-jail clothing for trial by state actors, I conclude that appellant was compelled to appear before the jury to be tried while wearing his jail uniform. Cf. Jackson, 270 Va. at 276, 619 S.E.2d at 95 ("In the absence of a *per se* rule, it has been held in one case that when the accused's civilian clothes are lost while in the possession of the state, *and he is not afforded the opportunity to obtain replacement clothes, the state effectively compels the accused to stand trial in prison clothes*." (emphasis added)).

As already noted, the record does not establish that the jail administrators' rejection on two occasions of appellant's clothing was objectively reasonable. The majority simply assumes without any evidence in the record to suggest, much less establish, that those reasons must have been reasonable. However, contrary to this assumption by the majority, the record reflects that

when appellant's girlfriend first brought clothing to the jail several weeks before trial, jail officials rejected the civilian clothing because it was outside the time window for receiving a defendant's clothing without any explanation in the record as to why receipt at that time was a problem for the jail or otherwise unreasonable. When appellant's girlfriend brought the clothing to the jail for the second time the morning of the trial, they were rejected because of a "taped hem" on the pants. Yet again, the record is silent as to why taped hems on pants were "inappropriate" or otherwise presented a problem for the jail. In short, nothing in the record suggests that there was anything reasonable about the jail official's rejection on two separate occasions of the civilian clothing that the appellant had arranged to wear for his jury trial. The Commonwealth concedes as much on brief admitting that the record does not clarify why the rejected clothing did not fall within the parameters of the sheriff's department's requirements, what those requirements were, or whether they were objectively reasonable. Finally, as the majority observes in footnote one, the record does not demonstrate that appellant was allowed to pursue other alternatives—i.e., whether the tape could simply be removed from the hem of his pants, whether appellant could wear the remainder of the clothing without the pants, etc. *Supra* at 5 n.1.

While the trial court granted a short recess that the majority finds was all that was necessary to satisfy the requirements of Estelle, the record is unclear exactly how long that recess lasted. However, the record does clearly reflect that the recess was only long enough for appellant's counsel to engage in an apparently fruitless discussion with the public defender in the back of the courtroom regarding the possible use of clothing in the public defender's possession. What the record does *not* suggest is how the jail officials or the trial court, as state actors, acted reasonably in both twice rejecting the civilian clothing brought for appellant's use at trial or how a brief recess to discuss borrowing clothing from those not involved in this case was sufficiently

reasonable to preserve appellant's due process right to a fair trial. Nor does the record reflect why an overnight recess or a delay of a few hours to allow appellant to make other clothing arrangements would have been unreasonable.

The holdings of Estelle and Jackson make it clear that after appellant asserted his constitutional right to due process by objecting to appearing before the jury in his jail uniform, the trial court erred *unless* it provided appellant with a reasonable opportunity to obtain alternate clothing. In the absence of affirmative evidence in the record demonstrating that appellant was afforded a reasonable opportunity to acquire alternate attire, in my view, the trial court abused its discretion by effectively compelling appellant to appear before the jury in his jail uniform.

The majority repeatedly states that it is appellant's burden to present a sufficient record to demonstrate that the trial court abused its discretion by compelling him to wear readily identifiable jail clothing before a jury trial. The majority relies on this principle to conclude that because "[w]hether defense counsel actually pursued . . . other potential alternatives – cannot be ascertained from the partial transcript in the record on appeal," the lack of such pursuit of alternatives in the record necessarily equates to a "reasonable opportunity to procure street clothes." However, as I have already noted, the majority apparently misapprehends the burden here. The absence of evidence in the record on this point does not serve to benefit the Commonwealth. As Estelle and Jackson make clear, absent a waiver by a defendant through his failure to object, it is the trial court's obligation to establish on the record that it provided the defendant with a reasonable opportunity to obtain alternate clothing. See Martin v. Commonwealth, 11 Va. App. 397, 409, 399 S.E.2d 623, 630 (1990) (holding that the trial court abused its discretion because it made no finding as to why it was necessary for the defendant to remain in shackles during his jury trial and there was no evidence in the record that the defendant

was a security risk when the trial court ordered him to be shackled).[8] If the record does not demonstrate that a defendant was provided such an opportunity by the trial court, the trial court necessarily abused its discretion.

The majority also relies on the trial court's factual finding that appellant's request to be tried in civilian clothes and his failure to produce suitable clothing was part of a pattern of behavior designed to avoid going to trial. However, even when a defendant acts in bad faith under circumstances unrelated to his request to avoid facing a jury in his jail or prison uniform, the trial court is not relieved from its obligation implicit in the reasoning underlying Estelle to provide a defendant with a reasonable opportunity to procure civilian clothing. Here, appellant's firing of several attorneys that resulted in multiple continuances is irrelevant to his request to avoid facing a jury in jail clothes and his prior delaying actions are irrelevant to whether or not his request could be reasonably accommodated.[9]

The majority also asserts that the record does not establish that appellant's clothing was "clearly identifiable as jail clothing." While the record provides a general description of appellant's attire—green scrubs, prison issued black shoes, and an ID bracelet—the record is clear that appellant was wearing a "Portsmouth City Jail" uniform. The trial judge opined that although he knew the uniform was undoubtedly jail attire, the jury might not be "sophisticated enough to know what jail clothes look like or not." I disagree with the majority's conclusion that the trial judge's musings about the possible lack of sophistication of the jury equates to a finding

---

[8] Although the majority factually distinguishes Martin from this case in footnote four, I cite Martin for the legal proposition that it is the trial court's burden, not appellant's, to establish on the record "the reasons for the choice of measures taken." 11 Va. App. at 406, 399 S.E.2d at 628. The factual distinction by the majority does not alter the applicability of that legal principle to this case.

[9] Moreover, the trial judge's conclusion that appellant's request was another delaying tactic is not supported by the record because it is undisputed that appellant had twice arranged for civilian clothes to be brought to him in advance of trial but they were rejected by the sheriff's department.

of fact that the uniform was not readily identifiable as jail attire. The trial judge further stated that it was appellant's responsibility to provide clothes within the parameters of the sheriff's department and if he did not, the trial court would "have to try him in jail clothes." A reasonable reading of the entire record demonstrates that the trial judge, the prosecutor, and defense counsel were all operating with the understanding that appellant's clothing was clearly a jail uniform. Notably, the Commonwealth does not argue on brief the conclusion reached by the majority that appellant's clothing was not readily identifiable as jail clothing.

Therefore, for the reasons stated, I would hold that because the record does not demonstrate that the trial court provided appellant with a reasonable opportunity to obtain civilian clothing thereby effectively compelling appellant to appear before the jury in his readily identifiable jail uniform, the trial court abused its discretion and violated the due process right of appellant to a fair trial in which he is presumed to be innocent.

III.

In concluding that the trial court erred in denying appellant's motion, I would further hold that such error was not harmless and therefore constitutes reversible error.

"A federal constitutional error is harmless, and thus excusable, only if it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" Quinn v. Commonwealth, 25 Va. App. 702, 719, 492 S.E.2d 470, 479 (1997) (quoting Chapman v. California, 386 U.S. 18, 24 (1967)). Thus, a constitutional error is reversible error if "'there is a reasonable possibility that the [error] complained of might have contributed to the conviction.'" Id. (quoting Fahy v. Connecticut, 375 U.S. 85, 86-87 (1963)); see also Crawford v. Commonwealth, 281 Va. 84, 101 704 S.E.2d 107, 117 (2011) (explaining that "'[t]he correct inquiry is whether, assuming that the damaging potential of the [error] were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt'"

(quoting Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986))). Despite the Commonwealth's argument to the contrary, I do not believe this Court can reasonably conclude that appellant's appearance before the jury in jail attire did not affect the verdict beyond a reasonable doubt.

"'[O]ne accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial.'" Porter v. Commonwealth, 276 Va. 203, 261, 661 S.E.2d 415, 445 (2008) (quoting Taylor v. Kentucky, 436 U.S. 478, 485 (1978)). "Accordingly, courts are required 'to safeguard against "the intrusion of factors into the trial process that tend to subvert its purpose'" by prejudicing the jury." Id. (quoting Woods v. Dugger, 923 F.2d 1454, 1456 (11th Cir. 1991)). The gravamen of Estelle is that compelling a defendant to stand trial in identifiable prison clothing is unfair not merely because it injects improper evidence of a defendant's imprisonment status into the presentation of the case, but also, more fundamentally, because a defendant's appearance in prison clothing invites and indeed *tempts* jurors to draw highly unfavorable inferences about his character and likely conduct. See Estelle, 425 U.S. at 505. Therefore, in general, being compelled to appear before a jury in clearly identifiable jail clothes is presumptively harmful because it undermines the fairness of the fact-finding process and, thus, "violate[s] the accused's fundamental right to a presumption of innocence while furthering no essential state interest." Jackson, 270 Va. at 276, 619 S.E.2d at 95; see also Estelle, 425 U.S. at 504 ("The potential effects of presenting an accused before the jury in prison attire need not, however, be measured in the abstract. Courts have, with few exceptions, determined that an accused should not be compelled to go to trial in prison or jail clothing because of the possible impairment of the presumption so basic to the adversary system."); Holbrook v. Flynn, 475 U.S. 560, 569 (1986) (explaining that "prison clothes are unmistakable indications of the need to separate a defendant

from the community at large" and violate the right to a fair trial; therefore, courts must avoid "the sort of inherently prejudicial practice[s]" that undermine the presumption of innocence by giving the jury the impression that the defendant is guilty and do not function to serve any state interest).

Several courts have held that compelling a defendant to appear before a jury trial in jail attire in violation of Estelle is not reversible error where the record demonstrates overwhelming evidence of guilt. See United States v. Martin, 964 F.2d 714, 721 (7th Cir. 1992). However, the record in this case does not establish *overwhelming* proof of appellant's guilt to render the trial court's error harmless. The only evidence offered of appellant's guilt was the testimony of one witness, the Walmart "asset protection" officer. When a defendant's innocence or guilt hinges on the credibility of one witness versus the credibility of the defendant, it simply cannot be said with any confidence that the defendant's appearance before the jury in jail attire cannot have not affected the jury's verdict beyond a reasonable doubt. Although appellant did not testify in his own defense, he still is entitled to the presumption of innocence. This Court's task is not to assess the appellant's potential credibility, but rather to "evaluate the likely effect of compelling [appellant] to appear before the jury in that attire 'based on reason, principle, and common human experience.'" Jackson, 270 Va. at 280, 619 S.E.2d at 97 (quoting Estelle, 425 U.S. at 504). It is however this Court's task to consider whether the appellant was denied a fair trial. Under these circumstances, the inherent unfairness of being tried in prison garb is not harmless error. The nature of the evidence and the probable impact on the jury of appellant's appearance in the courtroom makes it impossible for us to declare a belief that it was harmless beyond a reasonable doubt.

Moreover, when deciding whether to testify in his own defense or relying on the presumption of innocence, a defendant should not be required to consider the impact of wearing

jail clothing on his credibility as a witness.[10] Our Supreme Court has firmly stated that "[i]t is difficult to conceive of a circumstance more likely to disadvantage an accused than compelling him to testify in his own defense to the jury while wearing jail clothes." Id. (reasoning that at a minimum, that the accused's appearance in jail clothes is such a badge of guilt that it would render an accused's assertion of innocence less than fully credible to the jury").

In sum, I would hold that the trial court abused its discretion in compelling appellant to stand trial before a jury in readily identifiable jail attire in violation of his due process right to a fair trial, and I would further hold that this error was not harmless beyond a reasonable doubt. Therefore, I would reverse appellant's conviction and remand the case for a new trial if the Commonwealth is so advised.

---

[10] While not assigned as error in this case, the possibility of a defendant being dissuaded from testifying on his own behalf because he is being compelled to stand trial in jail attire may also infringe on a defendant's Sixth Amendment right to confront the witnesses against him. See, e.g., Martin, 11 Va. App. at 403, 399 S.E.2d at 626 (stating that "[u]nless appropriate steps are taken to conceal the fact that the defendant is wearing physical restraints," "the defendant may be impermissibly dissuaded from taking the witness stand in his own defense").